**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

WANDA BRANDON, ANDREW CRAIG  )
ALICE CROCKETT, NAOMI DAVIS   )
MAISHA ELLISON, HOLLIS FLANNERY )
AMIRA HERNDON, SHARON HARDNETT )
KIMBERLY HOLMON-ROME, WENDY  )
HUDDLESTON, MICHELLE JOHNSON  )
PRECIOUS MABRY , DIANA MATHIESON )
JOHNNIE MCCREARY, ASHLEY MOORE )
TAMMY O'CONNOR, PAUL PERNICIARO )
ANGEL SCOTT, TOMEKA SLAUGHTER  )
SHENICQUEL SPOTTS, DANIELLE   )
WATSON, NICHOLAS WILLIAMS,   )
              )
  **Plaintiffs,**       )
              )
**vs.**             )
             )  **Jury Trial Demanded**
**BOARD OF EDUCATION**    )
**OF THE CITY OF ST. LOUIS;**   )
             )
**KELVIN R. ADAMS;**     )
             )
**CHARLES K. BURTON;**    )
             )
  **Defendants.**     )

## <u>PLAINTIFFS' COMPLAINT</u>

   COMES NOW Plaintiffs Wanda Brandon, Andrew Craig, Alice Crockett, Naomi Davis,

Maisha Ellison, Hollis Flannery, Sharon Hardnett,  Amira Herndon, Kimberly Holmon-Rome,

Wendy Huddleston, Michelle Johnson, Precious Mabry, Diana Mathieson, Johnnie McCreary,

Ashley Moore, Tammy O'Connor, Paul Perniciaro, Angel Scott, Tomeka Slaughter, Shenicquel

Spotts, Danielle Watson and Nicholas Williams by and through their undersigned counsel, and

for their Complaint against Defendant Board of Education of the City of St. Louis, Kelvin R.

Adams and Charles K. Burton state the following:

**NATURE OF THE ACTION**

1.      Plaintiffs are and/or were employees of the Saint Louis Public School District who each object to receiving COVID-19 vaccinations based on their sincerely held religious beliefs.

2.      Defendants unjustly discriminate against Plaintiffs because of their sincerely held religious beliefs and their viewpoints by mandating that they must take the Covid-19 vaccine to remain employed by the Defendant District.

3.      Specifically, Defendants' vaccine mandate seeks to override Plaintiffs' sincerely held religious beliefs and discriminates against them on the basis of their religion.

4.      This case seeks to protect and vindicate statutory, and fundamental rights to the free exercise of religion protected by the United States Constitution and the Missouri Constitution. Plaintiffs bring a civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendants' acts, policies, practices, customs, and procedures, which deprived Plaintiffs of their First Amendment rights, their Fourteenth Amendment liberty right to privacy, self-autonomy and personal identity, including the right to reject government mandated medical treatment, their rights to be free from religious discrimination and retaliation protected by under 42 U.S.C. § 2000e, et seq., of Title VII of the Civil Rights Act of 1964, as amended, and the Missouri Human Rights Act, Section 213.010 R.S.Mo, et seq.

5.      Plaintiffs challenge the policies and actions detailed below on their face and as applied to Plaintiffs.

6.      Defendants' policies and actions deprived and will continue to deprive Plaintiffs of their paramount rights and guarantees under the United States Constitution and federal law.

7.      Defendants committed each and every act alleged herein under the color of law and authority.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1343.

9.      This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to Title 28, United States Code, Section 1367.

10.      This Court also has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.      Venue over Plaintiff' claims is proper in the Eastern District of Missouri because Defendant resides in the Eastern District of Missouri within the meaning of 28 U.S.C. § 1391 and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Missouri.

## THE PARTIES

12.      Plaintiff Wanda Brandon is an individual who began working for SLPS in 1995 as a substitute teacher, she left the district for several years, but returned to SLPS in 2002 as a substitute teacher.   She is a is a resident of St. Louis City, Missouri.

13.      Plaintiff Andrew Craig is an individual.  He has worked for SLPS since 1017 as an Aviation Vocational Tech Instructor.  He is a resident of St. Louis County, Missouri.

14.      Plaintiff Alice Crockett is an individual.  She has been an employee of SLPS for approximately twenty-one years and is a Drama teacher.  She is a resident of Saint Louis County, Missouri.

15.     Plaintiff Naomi Davis is an individual.  She has been a teacher with SLPS since 2015.  She teaches Mathematics.  She is a resident of St. Louis County, Missouri.

16.     Plaintiff Maisha Ellison is an individual.  She has been a teacher with SLPS since 2000.  She teaches Computer Lab.  She is a resident of Saint Louis County, Missouri.

17.     Plaintiff Hollis Flannery is an individual.  She has been a teacher since 2016 and has taught at SLPS since 2020 and has taught kindergarten and preschool.  She is a resident of Saint Charles County, Missouri.

18.     Plaintiff Sharon Hardnett is an individual.  She has been a teacher since 2008 and has taught at SLPS since 2019.  She is a resident of Saint Louis County, Missouri.

19.     Plaintiff Amira Herndon is an individual.  She has worked for SLPS for approximately 24 years and teaches mathematics. She is a resident of Saint Clair County, Illinois.

20.     Plaintiff Kimberly Holmon-Rome is an individual.  She began working at SLPS in 2008 as a substitute teacher, she left for the 2009-2010 school year and returned to SLPS in 2011 and has since been a substitute teacher for SLPS.  She is a resident of Saint Louis City, Missouri.

21.     Plaintiff Wendy Huddleston is an individual.  She has worked for SLPS as a teacher since 2001.  She is a resident of Saint Louis City, Missouri.

22.     Plaintiff Michelle Johnson is an individual.  She has worked for SLPS as a teacher since 2012. She is a resident of Saint Clair County, Illinois.

23.     Plaintiff Precious Mabry is an individual.  He has worked for SLPS for approximately eleven years as a Safety Officer II.  He is a resident of Saint Clair County, Illinois.

24.     Plaintiff Diana Mathieson is an individual. She has worked for SLPS since 2015 as a Science teacher.  She is a resident of Saint Louis County, Missouri.

25.     Plaintiff Johnnie McCreary is an individual.  He is a Special Education teacher and has worked for SLPS since 1983.  He is a resident of Saint Louis City, Missouri.

26.     Plaintiff Ashley Moore is an individual.  She began working for SLPS in 2011 as a substitute teacher.  She left the district in 2012.  She returned to SLPS in 2019 as a Substitute teacher. Her position was changed to Credit Recovery Facilitator in 2020.  She is a resident of Saint Louis City, Missouri.

27.     Plaintiff Tammy O'Connor is an individual.  She has been a teacher since 2008 and has worked for the Board and SLPS since 2007 as a Social Studies teacher.    She is a resident of Saint Louis County, Missouri.

28.     Plaintiff Paul Perniciaro is an individual.  He has worked for SLPS since 2009 as a Mathematics teacher.  He is a resident of Saint Louis County, Missouri.

29.     Plaintiff Angel Scott is an individual. She has worked for SLPS since 2018 as a Safety Officer and worked as an Intervention Specialist beginning in 2021.  She is a resident of Saint Louis City, Missouri.

30.     Plaintiff Tomeka Slaughter is an individual. She began working for SLPS in 1996 as a teacher's assistant.  She worked as a substitute teacher from 1999 through 2013 or 2014 and has worked as a social worker since then.  She is a resident of Saint Louis County, Missouri.

31.     Plaintiff Shenicquel Spotts is an individual.  She has been a teacher since 1995 and has worked for SLPS as a teacher since 1999. She is a resident of Sant Louis City, Missouri.

32.     Plaintiff Danielle Watson is an individual.  She has worked for SLPS as a teacher since 2004.  She is a resident of Saint Louis County, Missouri.

33.     Plaintiff Nicholas Williams is an individual.  He has worked for SLPS for approximately one year as a custodian.  He is a resident of Saint Louis City, Missouri.

34.     Defendant Board of Education of the City of St. Louis, (sometime referred to herein as the "Board") is a Board of Education and body corporate enacted under the laws of the state of Missouri which operates the Saint Louis Public School District ("SLPS") a "Metropolitan District" formed pursuant to Chapter 162 of the Missouri Statutes.  At all times relevant, Defendant Board has acted, and continues to act, under color of state law.  The Board operates and is headquartered in Saint Louis City, Missouri.

35.     Defendant Kelvin R. Adams is an individual who at all times relevant herein was Superintendent of the SLPS. He required Plaintiffs to comply with the contested policies set forth in this Complaint or face disciplinary action including unpaid suspension and termination. He is being sued in his individual official capacity. At all times relevant, Defendant Adams has acted, and continues to act, under color of state law.  Defendant Adams is a resident of Saint Louis City, Missouri.

36.     Defendant Charles K. Burton is an individual who at all times relevant herein was the Chief Human Resources Officer for SLPS. He required Plaintiffs to comply with the contested policies set forth in this Complaint or face disciplinary action including unpaid suspension and termination. He is being sued in his individual and official capacity. At all times relevant, Defendant Burton has acted, and continues to act, under color of state law. Defendant Adams is a resident of Saint Louis City, Missouri.

37.     Defendants Board, Adams and Burton are responsible for creating, adopting, approving, ratifying, and enforcing the policies, practices, customs, and procedures of Board, including the challenged policies, practices, customs, and procedures set forth in this Complaint.

## FACTS COMMON TO ALL COUNTS

38.     On August 24, 2021, the Board of Education adopted a policy #4624 requiring

employees to take a COVID-19 Vaccination.  It stated:

> By October 15, 2021, all individuals covered by this policy must either (a) establish that
>
> they are fully vaccinated*, including timely receipt of all booster vaccine doses
>
> recommended by the CDC; or (b) obtain an approved exemption as an accommodation as
>
> set forth below. Covered individuals who do not fulfill one of these two requirements by
>
> October 15, 2021 shall be placed on unpaid leave and/or subject to discipline, up to and
>
> including termination. Individuals covered under this policy that obtain an approved
>
> exemption shall be subject to COVID-19 testing on Monday and Thursday each week.
>
> See Exhibit 1, attached hereto.

39.     Policy #4624 was implemented by the Board after the district administration

made a recommendation to implement a policy mandating vaccination.  See Ex. 2, *August 25,*

*2021 Message to All Employees.*

40.     Section 162.621 R.S.Mo. grants the Board the power to "[m]ake, amend and

repeal rules and bylaws for its meetings and proceedings, for the government, regulation and

management of the public schools and school property in the city, for the transaction of its

business, and the examination, qualification and employment of teachers".

41.     The defendants acted under the color of Section 162.621 and the Boards policies

in their deprivation of the rights of the Plaintiffs as set forth herein.

42.     Policy #4624 indicated that persons could seek exemptions for disability, religious or other medical reasons.

43.     Policy #4624 states:

"The District provides reasonable accommodations, absent undue hardship, to employees with sincerely held religious beliefs, observances, or practices that conflict with getting vaccinated. If you believe you need an accommodation regarding this policy because of a sincerely held religious belief, you are responsible for requesting a reasonable accommodation from the Human Resources Department. You must use and submit the form(s) provided by the District in order to be eligible for an exemption."

44.     The district told the employees that they could apply for a religious exemption and continue teaching by receiving tests on Monday and Thursday each week, indicating they were capable of accommodating employees request for religious exemptions.[1]

45.     SPLS provided the Plaintiffs with forms to submit requests for religious exemptions.[2]

46.     Each of the Plaintiffs have sincerely held religious beliefs that prevent them from receiving the COVID-19 vaccines.

47.     Each Plaintiff submitted a request for religious exemptions outlining how taking the COVID-19 vaccine conflicted with their sincerely held religious beliefs.

48.     The District denied each of the Plaintiffs' requests for religious exemption.

49.     The District received between 150 and 200 requests for religious exemption.[3]

---

[1] Ex. 1, Policy #4624; Ex. 2 *August 25, 2021 Message to All Employees.*
[2] Ex. 2 *August 25, 2021 Message to All Employees.*
[3] Ex. 3, Deposition of Charles Burton, December 2, 2021, 40:18-25

50.     The district did not grant any requests for religious exemptions.[4]

51.     The district does not know how much time was spent reviewing each request.[5]

52.     The district does not have any documentation as to whom reviewed the requests.[6]

53.     The district does not know who reviewed the requests.[7]

54.     The district did not make a determination as to whether the Plaintiffs' religious beliefs were sincerely held prior to denying their requests.[8]

55.     The district did not dispute that the religious beliefs of the Plaintiffs are sincerely held.

56.     The determination to deny the requests for religious exemption was made by Charles Burton and Karla Dozier.[9]

57.     The district granted between 40 and 50 exemptions for disability and medical exemptions.[10]

58.     The district granted more requests for disability and medical exemptions than they denied.[11]

59.     The people granted disability and/or medical exemptions received the accommodation of twice per week testing which is the same accommodation sought by Plaintiffs.

60.     The people granted disability and/or medical exemptions were able to continue their employment including teaching students.[12]

---

[4] Ex. 3, Deposition of Charles Burton, December 2, 2021, 16:22-24
[5] Ex. 3, Deposition of Charles Burton, December 2, 2021, 41:1-13
[6] Ex. 3, Deposition of Charles Burton, December 2, 2021, 39:24-40:9.
[7] Ex. 3, Deposition of Charles Burton, December 2, 2021, 39:24-40:9.
[8] Ex. 3, Deposition of Charles Burton, December 2, 2021, 17:3-5
[9] Ex. 3, Deposition of Charles Burton, December 2, 2021, 12:18-22, 35:19-21, 42:1-8
[10] Ex. 3, Deposition of Charles Burton, December 2, 2021, 19:19-20:2, 25:10-22
[11] Ex. 3, Deposition of Charles Burton, December 2, 2021, 54:17-21
[12] Ex. 3, Deposition of Charles Burton, December 2, 2021, 25:23-26:15

61.     The accommodation of twice per week testing was identical under Policy #4624 for the disability exemption, religious exemption and medical exemption.[13]

62.     The defendants' disparate issuance of exemptions to persons seeking disability and medical exemptions versus those seeking religious exemptions indicates the defendants' policies and implementation of those policies are not neutral and generally applicable.

63.     Granting the exemption to the Plaintiffs would be at most a de minimis cost to the Defendants.

64.     There was no testing requirement during the 2020-2021 school year.[14]

65.     Teachers did not receive biweekly testing during the 2020-2021 school year.[15]

66.     Teachers were able to teach their students in the district without biweekly testing.[16]

67.     Students received free access to public education without the need of biweekly testing during the 2020-2021 school year.[17]

68.     Other school districts in the State of Missouri do not require the employees to receive exemptions to continue performing their job – they allow employees to opt out of COVID-19 vaccination requirements.[18]

69.     The district administration harassed its employees, including the Plaintiffs, to get the COVID-19 vaccine which had the purpose and effect of creating a hostile working environment.

---

[13] Ex. 3, Deposition of Charles Burton, December 2, 2021, 67:14-17
[14] Ex. 3, Deposition of Charles Burton, December 2, 2021, 21:4-7
[15] Ex. 3, Deposition of Charles Burton, December 2, 2021, 21:8-13
[16] Ex. 3, Deposition of Charles Burton, December 2, 2021, 21:12-13
[17] Ex. 3, Deposition of Charles Burton, December 2, 2021, 21:14-19
[18] Ex. 3, Deposition of Charles Burton, December 2, 2021, 23:21-24-9

70.     SLPS issued "Religious Vaccine Exemption Response" letters to the Plaintiffs in September 2021.  Each letter was substantially identical, with only the recipient and date changing, and each such letter indicated SLPS denied the religious exemption request of the Plaintiffs.   See Exhibit 4 as example.

71.     The "Religious Vaccine Exemption Response" letters stated:

"As a public entity, the St. Louis Public School District (SLPS) must balance the constitutional obligation to provide a free public education to "all persons in this state within ages not in excess of twenty-one years...," against the individual state and federal constitutional right to the free exercise of religion. Art. IX, Sec 1(a), Mo. Const." and "the balance of competing constitutional interests weigh in favor of the rights of students."  See Exhibit 4 as example.

72.     The Defendants' citation to the Missouri Constitution as an excuse to infringe the rights of religious freedom of the Plaintiffs fails because there is no federally protected right to an education under the U.S. Constitution. See *San Antonio Independent School District v. Rodriguez,* 411 U.S.1 (1973).  "Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."  Id. at 35.

73.     The Supremacy Clause of the U.S. Constitution (Article VI, Clause 2), establishes the rights established by the U.S. Constitution and the protections of Title VII take priority over state law.

74.     A state statute is void to the extent that it actually conflicts with a valid Federal statute.  *Edgar v. MITE Corp*., 457 U.S. 624 (1982).

75.     Even within the Missouri Constitution, the right to free exercise of religion under the Missouri Constitution trumps language in the Missouri Constitution addressing education because the free exercise of religion is designated a "natural and indefeasible right" whereas education is a legal benefit maintained by the state.

76.     The Bill of Rights of the Missouri Constitution states:

"That all men and women have a *natural and indefeasible right* to worship Almighty God according to the dictates of their own consciences; that *no human authority can control or interfere with the rights of conscience* .. . nor shall a citizen's right to pray or express his or her religious beliefs be infringed… and, to emphasize the right to free exercise of religious expression, that all free public schools receiving state appropriations shall display, in a conspicuous and legible manner, the text of the Bill of Rights of the Constitution of the United States"

MO Const., Art. I, § 5. (*Emphasis added*.)

77. The inalienable right to the freedom of religion contrasts with the language in the Missouri Constitution addressing religion:

A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and maintain free public school for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law.

MO Const., Art. IX, § 1(a).

78.     The Missouri Constitution specifies that freedom of religion is an "natural and indefeasible right" but does not specify educational access as a natural right as it in not included

in the Missouri Bill of Rights, indicating the right to freedom of religion trumps the maintenance of free public education.

79.     Any balancing between the constitutionally protected natural and indefeasible right of Plaintiffs to the free exercise of her religion and the obligation of the district to provide free education must fall to the side of Plaintiffs' natural and indefeasible right to freedom of religion.

80.     Plaintiff O'Connor sought legal representation by Joseph A. Morrey of the Law Offices of Joseph A. Morrey and Richard L. Mast of Liberty Counsel, who sent the defendants a detailed letter on or about September 28, 2021 ("*Liberty Counsel letter*") outlining how the districts policies unlawfully infringed upon the Constitutional and Statutory rights of the Plaintiffs.  See Exhibit 5, *Liberty Counsel Letter*, attached hereto.

81.     The Liberty Counsel letter placed the Defendants on notice that their actions taken would violate the constitutional rights of the plaintiffs and demonstrates that the defendants knowingly took action against the Plaintiffs with the malicious intention to cause a deprivation of constitutional rights and injury to the plaintiffs.

82.     The Defendants ignored the rights of the Plaintiffs and chose to either terminate them or suspend them without pay pending a hearing on their termination.

83.     Of the 150 to 200 people who made requests for religious exemptions between 100 and 127 were suspended and/or terminated by the district after their request for religious exemption was denied by the district.[19]

---

[19] Ex. 3, Deposition of Charles Burton, December 2, 2021, 80:9-22

84.     The Plaintiffs who were teachers with more than five years of employment were "permanent" and the district was required to issue charges against them and provide them a hearing pursuant to Section 168.221 R.S.Mo. prior to their termination.

85.     The Superintendent Kelvin Adams issued statements of charges against the Plaintiffs who were permanent teachers beginning on October 15, 2021 indicating he was suspending them without pay and was seeking their termination with the board.[20]

86.     The charges alleged they violated Policy 4624 by failing to provide proof that they had received the COVID-19 vaccine or have obtained an approved exemption pursuant to Policy 4624, and that they violated policy 4840 subsection one requiring district employees to become familiar with and enforce and follow all board policies and 4840 subsection 11 which requires all district employees to refrain from conduct that disrupts the educational process.[21]

87.     The district alleges the permanent teachers disrupted the educational process by failing to become vaccinated.[22]

88.     The charges brought against the permanent teachers were all identical.[23]

89.     The permanent teachers suspended by Kelvin Adams after SLPS refused to grant their request for religious exemption along with the date of their suspension without pay date are:

    a.  Alice Crocket, October 20, 2021;

    b.  Amira Herndon, October 19, 2021;

    c.  Andrew Craig; October 18, 2021;

    d.  Danielle Watson, October 18, 2021;

---

[20] Ex. 3, Deposition of Charles Burton, December 2, 2021, 64:22-65-3
[21] Ex. 3, Deposition of Charles Burton, December 2, 2021, 66:21-67:5.
[22] Ex. 3, Deposition of Charles Burton, December 2, 2021, 66:21-67:5.
[23] Ex. 3, Deposition of Charles Burton, December 2, 2021, 66:3-7

e.   Diana Mathieson, November 2, 2021;

f.   Hollis Flannery, October 20, 2021;

g.   Johnnie McCreary, October19, 2021;

h.   Maisha Ellison, October 20, 2021;

i.   Michelle Johnson; October 20, 2021;

j.   Naomi Davis, October 19, 2021;

k.   Paul Pernicaro, October 18, 2021;

l.   Shenicquel Spotts, October 20, 2021;

m.   Tammy O'Connor, October 18, 2021;

n.   Sharon Hardnett, October 16, 2021.

90.   The district terminated the Plaintiffs who were not permanent teachers; their names and termination dates are:

a.   Angel Scott, October 21, 2021;

b.   Ashley Moore, October 16, 2021;

c.   Kimberly Holmon-Rome; October 26, 2021;

d.   Nicholas Williams, October 15, 2021;

e.   Precious Mabry, October 26, 2021;

f.   Tomeka Slaughter, October 26, 2021;

g.   Wanda Brandon; October 26, 2021.

91.   The district denied the request for religious exemption of Plaintiff Wendy Huddleston, however it later granted a request for medical exemption she submitted.  She was not suspended or terminated, but was nevertheless irreparably harmed by the defendants.[24]

---

[24] The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 US 347, 373 (1976).

92.     The Plaintiffs were able to work and teach in the district from the beginning of the school year in August 2021 until they were terminated or suspended by the district.[25]

93.     Charles Burton's deposition was taken on December 2, 2021 in preparation for the hearings on the charges the district brought against the teachers. A copy of which is attached hereto as Exhibit 3.

94.     Charles Burton testified in his deposition that people whom the district granted medical exemptions were not required to begin submitting to the twice per week testing until "a week or so" before Charles Burton's deposition on December 2, 2021, indicating the district allowed unvaccinated teachers who were granted medical exemptions to continue teaching for approximately six weeks without twice per week testing after the district suspended and terminated the Plaintiffs.[26]

95.     The district does not dispute that the religious beliefs of the Plaintiffs are sincerely held.

96.     Plaintiff O'Connor was given a hearing on the charges brought by SLPS against her on December 16, 2021 in which evidence was taken.

97.     Charles Burton, Chief Human Resources Officer testified at O'Connor's December 16, 2021 hearing.

98.     Plaintiff O'Connor was represented by the undersigned at her hearing on the charges.

99.     The undersigned submitted a post hearing brief on January 7, 2022, including serving copies on the hearing officer appointed by the district to report to the board, as well as the attorneys for SLPS.  The post hearing brief discussed the unlawful actions of the defendants

---

[25] Ex. 3, Deposition of Charles Burton, December 2, 2021, 84:7-21
[26] Ex. 3, Deposition of Charles Burton, December 2, 2021, 20:11-14

and further placed them on notice that their actions were violating the religious freedoms of the

Plaintiffs.   See *Employee Tammy O'Connor's Post Hearing Brief*, Attached hereto as Exhibit 6.

100.    The Board did not issue a determination as to the charges brought against

O'Connor or other Plaintiffs.

101.    In January 2022, the district changed its mind and granted the request for

religious exemptions of most of the Plaintiffs.

102.    The District sent Plaintiffs who were permanent teacher letters titled "Exemption

Approval, Return to Work, and New Statement of Charges" in mid-January 2022; the letters

were substantially identical and indicated that the District was "now able to grant your request

for sincerely held religious exemption", "the District is withdrawing and removing from your

personnel file the Statement of Charges previously issued to you", that they were directed to

return to their assignments, and that "with respect to the time that you have been on an

administrative leave due to your non-compliance with District Policy P4724, you will be

receiving a new Statement of Charges related to your administrative leave time".   See Exhibit 7

as an example.

103.    The district did not pay the permanent teachers for the period they were

suspended

104.    The District sent Plaintiffs Kimberly Holman-Rome, Precious Mabry, Ashley

Moore, and Nicolas Williams, who were not permanent teachers, letters titled "Exemption

Approval and Reappointment, which were substantially identical and indicated the District was

"now able to grant your request for sincerely held religious exemption", that they were "eligible

for reappointment" as an employee, that they did not need to reapply, interview, or complete

new onboarding process. See Exhibit 8, as an example.

105.     The district did not pay the employees the back pay for the period from the date of their termination until their reappointment.

106.     The district did not rehire Plaintiffs Angel Scott or Tomeka Slaughter.

107.     On or about February 7, 2022, SLSP issued new "Statement of Charges" to the permanent teachers.  The letters were all substantially identical and sought to suspend the teachers without pay for the period from October 2021 through January 2022 when they had been suspended without pay after the first statement of charges were issued.   See Exhibit 9, as an example.

108.     There are common questions of law and fact common to all parties herein.

109.     The claims of each Plaintiff arise out of a single transaction or occurrence or series of transactions or occurrences.

110.     The defendants' conduct was motivated by evil motive or intent and/or the defendants' conduct involved reckless or callous indifference to the federally protected rights of the Plaintiffs.

111.     Each plaintiff has timely dually filed a charge of discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunities Commission ("EEOC"). See Exhibit 10, attached hereto.

112.     The Plaintiffs have requested right to sue letters.

113.     The EEOC has issued right to sue letters to the majority of Plaintiffs and the remaining Plaintiffs anticipate they will receive the outstanding right to sue letters shortly.[27] See Exhibit 11, attached hereto.

---

[27] Exhaustion of administrative requirements is not necessary where there are multiple plaintiffs and "similar and sufficient factual basis" between the plaintiffs.  *Winbush v. State of Iowa by Glenwood State Hosp.*, 66 F. 3d 1471, 1478 (8th Cir. 1995).   Once a single plaintiff has filed an EEOC complaint, other non-filing plaintiffs may join in the action if they allege facts showing that they were similarly situated and that their claims arose out of similar

## COUNT I – VIOLATIONS OF PLAINTIFFS' RIGHT TO FREE EXERCISE OF

## RELIGION – AGAINST ALL DEFENDANTS

114.    Plaintiffs restate and reallege the foregoing paragraphs as though set forth fully herein.

115.    This count is brought pursuant to 42 U.S.C. 1983 for deprivation of rights.

116.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

117.    The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a

---

discriminatory treatment. *Id.* The purpose of the filing requirements is to enable conciliation by the EEOC and to protect defendants from surprise. *Id.* In this case, the EEOC/MCHR filings that were made put the defendants on notice of allegations that they discriminated against persons because of their religious beliefs and no conciliatory purpose would have been served by requiring separate filings.

19

compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

118.    Plaintiffs have sincerely held religious beliefs that prohibit their receipt of COVID-19 vaccines.

119.    Defendants violate Plaintiffs' First Amendment right to freely exercise their religious beliefs by mandating an invasive medical treatment that substantially interferes with Plaintiffs' religious free exercise rights.

120.    Defendants' vaccination policy (#4624) substantially burdened Plaintiffs' sincerely held religious beliefs by burdening them to receive a COVID-19 vaccine that would violate those religious beliefs or suffer adverse employment action and financial harm.

121.    Defendants' policies and practices create government-imposed, coercive pressure on Plaintiffs to change or violate their sincerely held religious beliefs.

122.    Defendants' policies, practices, customs, and procedures, punish and impose discipline on its employees, including the Plaintiffs, for exercising his or her right to free exercise of their religious beliefs.

123.    Defendants' actions injure Plaintiffs by chilling their religious activity and religious speech through threat of discipline, including suspension and termination, by Defendants for failure to comply with its new policies.

124.    Defendants imposed adverse employment actions in the form of unpaid suspensions and terminations against the Plaintiffs.

125.    Defendants' vaccination policy is not a neutral and generally applicable law or policy.

126.    Defendants' vaccine policy fails strict scrutiny.

127.    Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine.

128.    Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the districts purported interest because the Plaintiff's worked and taught in the district for over a year before the district implemented its vaccine policy during the COVID-19 pandemic with a ready and healthy staff that had not been fully vaccinated.

129.    Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing, which is further indicated by the Defendants' granting of the religious exemptions of most of the Plaintiff's.

130.    Defendants' Vaccine Mandates violate Plaintiffs' rights to the free exercise of religion under the First Amendment.

131.    By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their right to the free exercise of their sincerely held religious beliefs in violation of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

132.    Because of Defendants' policy and actions, Plaintiffs have suffered and continue to suffer irreparable harm, they are entitled to equitable relief.

133.    Defendants' actions were motivated by evil motive or intent and involved reckless or callous indifference to the federally protected rights of Plaintiffs.

134.    They are entitled to compensatory damages to compensate them for the losses they have sustained.

135.    They are entitled to nominal damages in the event no actual damages are found.

136.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' policy and actions.

137.    Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## COUNT II - RIGHT TO PRIVACY, PERSONAL AUTONOMY, AND PERSONAL IDENTITY – AGAINST ALL DEFENDANTS

(Fourteenth Amendment; 42 U.S.C. § 1983)

138.    Plaintiffs restate and reallege the foregoing paragraphs as though set forth fully herein.

139.    This count is brought pursuant to 42 U.S.C. 1983 for deprivation of rights.

140.    By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their fundamental constitutional right to privacy, personal autonomy, and personal identity, all in violation of the Fourteenth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

141.    Defendants further deprived Plaintiffs of their fundamental right to bodily integrity to make their own informed medical decisions.

142.    Defendants have violated Plaintiffs' Fourteenth Amendment rights by favoring and enforcing policies that approve of and force medical treatment, including vaccinations, over Plaintiffs' right to privacy, personal identity and personal autonomy.

143.    Defendants' conduct has deprived the Plaintiffs of their personal choices central to individual dignity and autonomy, including intimate choices defining personal identity and beliefs by stigmatizing and labeling their sincerely held religious beliefs as unworthy of protection by Defendants.

144.    Defendants' policies, practices, customs, and procedures, punish and impose discipline on Plaintiffs for alleged violations of Defendants' policies, simply for exercising their religious and medical right to make their own medical decisions.

145.    Defendants' actions have injured Plaintiffs by violating their constitutional rights through threat of discipline and sanction by Defendants for failure to comply with their new policies.

146.    Because of Defendants' policy and actions, Plaintiffs have suffered and continue to suffer irreparable harm, they are entitled to equitable relief.

147.    Defendants' actions were motivated by evil motive or intent and involved reckless or callous indifference to the federally protected rights of Plaintiffs.

148.    They are entitled to compensatory damages to compensate them for the losses they have sustained.

149.    They are entitled to nominal damages in the event no actual damages are found.

150.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' policy and actions.

151.    Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## COUNT III – VIOLATIONS OF THE MHRA – AGAINST DEFENDANT BOARD OF EDUCATION OF THE CITY OF ST. LOUIS

152.    Plaintiffs restate and reallege the foregoing paragraphs as though set forth fully herein.

153.    This Count is brought pursuant to the Missouri Human Rights Act (MHRA), Chapter 213 of the Missouri Revised Statutes.

154.    Section 213.055 R.S.Mo. states in relevant part:

"It shall be an unlawful employment practice . . . [t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion   . . .  [t]o limit, segregate, or classify his employees or his employment applicants in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … religion . . .

155.    Defendant Board is an employer as defined under Chapter 213 R.S.Mo.

156.    Defendant Board harassed and discriminated against Plaintiffs based upon their religion.

157.    Defendant Board suspended, terminated, refused to reinstate and/or constructively discharged Plaintiffs because of their religion.

158.    Defendant Board limited, segregated and classified plaintiffs in order to deprive them of employment opportunities and adversely affected their status as employees because of their religion.

159.     Defendant's harassment and discrimination of Plaintiffs affected terms, conditions, and/or privileges of their employment.

160.     Defendant Board was aware of the harassment and discrimination inflicted on Plaintiffs.

161.     Defendant Board discharged and discriminated against Plaintiffs with respect to their compensation, terms, conditions, or privileges of employment, because of their religion.

162.     Plaintiffs' religion was a contributing and motivating factor and the exclusive cause in Defendant Board's discriminatory actions against them.

163.     Plaintiffs suffered financial loss, incurred attorney fees and costs, decreased business opportunities, emotional pain, suffering, inconvenience, loss of enjoyment of life because of the actions of the Defendant.

164.     The Defendant's articulated reasons for its actions were pretexts for unlawful actions.

165.     The Defendant's conduct was outrageous because of the Defendant's evil motive or reckless indifference to the Plaintiffs' rights.

166.     Defendant's actions were intentional, willful, knowing, wanton and malicious, and in flagrant disregard for the rights of Plaintiffs, and entitle Plaintiffs to an award of punitive damages.


## COUNT IX – VIOLATIONS UNDER TITLE VII OF 42 U.S.C SECTION 2000E OF THE CIVIL RIGHTS ACT OF 1964 – AGAINST DEFENDANT BOARD OF EDUCATION OF THE CITY OF ST. LOUIS

167.    Plaintiffs restate and reallege the foregoing paragraphs as though set forth fully herein.

168.    Defendant Board is an employer as defined by 42 U.S.C. § 2000e.

169.    Defendant Board intentionally engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e, *et seq*., of Title VII of the Civil Rights Act of 1964, as amended, by practices including, but not limited to, harassing, suspending, terminating and/or constructively discharging, and/or failing to reinstate Plaintiffs.

170.    The actions of Defendant was motivated by Plaintiffs' religion.

171.    As a direct and proximate result of these unlawful employment practices, Plaintiffs have suffered losses of wages, benefits, experience, and career advancement and have suffered mental anguish and humiliation.

172.    Because of these damages, plaintiffs are entitled to such affirmative relief as may be appropriate, including but not limited to reinstatement, lost wages, and benefits in accordance with the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g).

173.    The Defendant's conduct was outrageous because of the Defendant's evil motive or reckless indifference to the Plaintiffs' rights.

174.    Defendant's actions were intentional, willful, knowing, wanton and malicious, and in flagrant disregard for the rights of Plaintiffs, and entitles Plaintiffs to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs pray this court after a trial by jury, for which a jury is hereby demanded, to enter judgment:

a)  Declaring that the Defendants have violated the rights of the Plaintiffs as set forth above;

b) Declaring that Defendants' vaccine mandate policy which is invalid and unconstitutional for all the reasons as set forth in this Complaint;

c) Declaring that Defendants acted unconstitutionally and outside their authority as set forth in this Complaint;

d) Declaring that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this Complaint;

e) Declaring that Defendants' violated Plaintiffs' statutory rights as set forth in this Complaint;

f) Entering  an temporary restraining order, preliminary and permanent injunctions enjoining Defendants' vaccine mandate policy for all the reasons as set forth in this Complaint;

g) Ordering Defendants to make Plaintiffs whole for the loss of income they have suffered as a result of the unlawful acts of Defendants, including back pay from the time of the unlawful acts with interest thereon and fringe benefits, reinstatement and/or front pay, compensatory damages, damages for past and future mental anguish, inconvenience, loss quality of life, and pain and suffering, nominal damages if not actual damages are found, punitive damages in the maximum amount allowed by law, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, in an amount to be determined at trial, in excess of $75,000.00;

h) Awarding Plaintiff the costs of this action, including reasonable attorney fees and expenses incurred; for interest on all amounts;

i) and  to Grant such additional and affirmative relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs, through counsel, respectfully requests a trial by jury on all issues.

Respectfully submitted,

**KASPER LAW FIRM, LLC**

By: */s/ Kevin J. Kasper*

Kevin J. Kasper, #52171MO
Ryan P. Schellert, #56710MO
3930 Old Hwy 94 South - Suite 108
St. Charles, MO 63304
Ph: 636-922-7100
Fax: 866-303-2874
Email: KevinKasper@KasperLawFirm.net
Email: RyanSchellert@KasperLawFirm.net
*ATTORNEYS FOR PLAINTIFF*