IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| WANDA BRANDON, ET AL., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | )    4:22-CV-00635 SRC |
| BOARD OF EDUCATION | ) |
| OF THE CITY OF ST. LOUIS; ET Al., | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSTION TO DEFENDANTS' MOTION TO DISMISS (Doc. No. 13)**

**1) The defendant's violated Plaintiff's Constitutional Rights.**

The defendants argue that they may implement measures that infringe on constitutional rights of the plaintiff during public health crises, citing *Jacobson v. Commonwealth of Massachusetts*. 197 U.S. 11 (1905) and *In re: Rutledge*, 956 F.3d 1018, 1027 (8th Cir. 2020). Those cases are not applicable to the present case because the defendant's policies are not "neutral" and of "general applicability," and therefore they must satisfy "strict scrutiny," and this means that they must be "narrowly tailored" to serve a "compelling" state interest, and that the district has available less restrictive rules it could have applied which is the standard required under *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020).

    **a) Deferential Standard does not apply.**

Defendants argue the court should apply the deferential standard outlined in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) because the policy was in response to a public health crisis. The deferential standard does not apply because the actions of the defendants were not done

1

during a period of a public health crisis necessitating emergency public health initiatives as required for the deferential standard to apply.

The recent case of *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022), is instructive. In *Heights Apartments*, the Eighth Circuit reviewed executive orders from March 2020 and June 2020 issued by the Governor of Minnesota. The plaintiff was a landlord who contested the executive order barring tenant evictions. He filed suit on September 24, 2020 to contest the orders. The court analyzed the standard of review for the Constitutional claims at issue – whether the executive orders were subject to review under the deferential standard found in *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905), or the traditional tiers of scrutiny followed by more recent Supreme Court decisions, citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. ___, 141 S.Ct. 63, 67, 69, 208 L.Ed.2d 206 (2020) (per curiam) (stating New York's COVID-related church attendance restrictions failed strict scrutiny's rigorous review). *Heights Apartments*, 30 F.4th at 726. The Eighth Circuit also looked at its 2020 decision of *In re Rutledge*, 956 F.3d 1018 (8th Cir. 2020). *Id.* It noted:

> "When this Court decided *In re Rutledge*, we were in the early days of the pandemic. Much was unknown at that time—governmental leaders were acting on the best information available and needed to move quickly given the nature of the emergency. At a time when local authorities were confronted with a public health crisis that was rapidly developing, poorly understood, and in need of immediate and decisive action, Jacobson seemed to be the best guide for navigating constitutional challenges to emergency public health initiatives. The public health crisis has since evolved, and time is available for more reasoned and less immediate decision-making by public health officials. In addition, the Supreme Court has since given guidance that is instructive regarding our standard of review during public health crises. See, e.g., *Chrysafis v. Marks*, 594 U.S. ___, 141 S.Ct. 2482, 210 L.Ed.2d 1006 (2021) (enjoining part of New York's COVID-19 Emergency Eviction and Foreclosure Prevention Act due to alleged due process violations without mentioning Jacobson); *Tandon,* 141 S. Ct. at 1296-97 (applying strict scrutiny to California's restrictions on religious gatherings).

> Heights alleges violations of its rights beginning in March 2020. Some of the damages it allegedly suffered likely occurred during the public health crisis when Jacobson deference would be applicable. Some likely occurred after the immediate public health crisis dissipated, and traditional levels of scrutiny are applicable. See *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 65, 70. It is a factual determination left to the district court on remand to resolve when during the pandemic the constitutional lens shifted from Jacobson deference to the modern tiers of scrutiny.
>
> *Heights Apartments*, 30 F.4th at 726-727."

In the present case, the policy at issue was adopted by the SLPS board on August 24, 2021 and went into effect on October 15, 2021. This is over a year after the plaintiff in *Heights Apartments* filed his case which the 8th Circuit indicated would be past the time the immediate public health crises had dissipated and that traditional tiers of scrutiny would apply. This indicates the SLPS vaccination policy was enacted well after the immediate public health crisis dissipated and the deferential standard of Jacobson is no longer applicable. See *Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S.Ct. 1294 (2020)(applying strict scrutiny to 2020 executive order related to COVID-19).

Also, the SLPS vaccination policy did not go into effect for two months after it was enacted, showing it was not a reaction to an emergency situation which would require immediate and decisive action. Waiting two months is not immediate action. Thus, *Jacobson* deferential analysis is not applicable and traditional scrutiny applies.

**b) Defendants' vaccination policy is not neutral and generally applicable.**

Laws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are both neutral and generally applicable. *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1872 (2021). Policies that are not neutral and generally applicable require strict scrutiny. *Id.* Government regulations are not neutral and

generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue. *Id.* The government has the burden to establish that the challenged law satisfies strict scrutiny. *Id.* To do so in this context, it must do more than assert that certain risk factors "are always present in worship, or always absent from the other secular activities" the government may allow. *Id.* Instead, narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. *Id.* Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. *Id.* at 1297. Otherwise, precautions that suffice for other activities suffice for religious exercise too. *Id..* Failing either the neutrality or general applicability test is enough to trigger strict scrutiny and impose on the government the burden of showing that its law serves a compelling interest and employs the least restrictive means of doing so. *Lukumi*, 508 U.S. at 531, 113 S.Ct. 2217.

In the present case, the defendant's policies are not generally applicable. A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by creating a mechanism for individualized exemptions. *Fulton*, 141 S. Ct. at 187. Where such a system of individual exemptions exists, the government may not refuse to extend that system to cases of religious hardship without a compelling reason. *Id.* "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."

The SLPS vaccination policy has an exemption of twice per week testing for disability, religion and medical reasons. By creating a mechanism for exemptions the district has made the policy not generally applicable. *Fulton*, 141 S. Ct. at 1872. Defendants have not argued or shown that their policy serves a compelling interest or that it served the least restrictive means of doing so.

The defendants have allowed exemptions for medical reasons. Defendants have not shown how granting the plaintiffs' religious exemptions would have posed any more danger than their granting of numerous medical exemptions. The exemptions sought – twice per week testing - were exactly the same for the religious and medial exemptions.

Notably, in *In Re Rutledge* the court noted that the health directive at issue in that matter "has stopped all elective or non-emergency surgical procedures, not just surgical abortions, in order to deal with PPE shortages, the rising number of people infected with COVID-19, and existing burdens on hospitals and other healthcare facilities." *In Re Rutledge* 56 F.3d at 1029. That differs remarkably from the current case where SLPS has decided to grant the majority of medical exemptions and granted zero religious exemptions. The present case is more akin to the numerous cases looking at the application of government policies to the religious rights. See *Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63, 73 (2020)(Order not neutral because it singled out houses of worship for especially harsh treatment where a large store could have hundreds of persons shopping on a given day whereas a nearby church was prohibited from allowing more than 10 or 25 people inside for worship service); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)(Ordinances preventing religious organizations from animal sacrifice while allowing butchering of animals by slaughterhouses and groceries "were enacted by officials who did not understand, failed to perceive, or chose to ignore the fact

5

that their official actions violated the Nation's essential commitment to religious freedom"); *US Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir 2022)(granting medical exemptions for a vaccine requirement while refusing to grant religious exemptions rendered the vaccine requirement underinclusive and was a telltale sign that the governments interest in enacting a liberty-restraining pronouncement is not in fact compelling; and the Navy's religious accommodation process is "an empty formality" because "the denial of each request is predetermined", it is "theater", the Navy "rubber stamps each denial", and "[T]he Plaintiffs' requests are denied the moment they begin."); *Doster v. Kendall*, 1:22-cv-84, Order March 31, 2022 (U.S.Dist.Ct. S.D.Oh.)(Air Force's approval of only 23 religious exemption requests while granting 1,129 medical exemptions and 1,426 administrative exemptions found to be "shameful" and "farcical statistics" and the Air Force "has effectively stacked the deck" against service members seeking religious exemptions justifying injunction enjoining and restraining discipline of service members who were denied religious exemptions to COVID-19 vaccine requirement).

Moreover, the health directive at issue in *In Re Rutledge* was to last no longer than sixty days, which the court noted made the "ADH directive a delay, not a ban" on women seeking to undergo an abortion. In Re Rutledge 56 F.3d at 1030. Most importantly, the events of the current case took place after the public health crisis had past and rules applicable to emergency measures no longer apply. See *Heights Apartments*, 30 F.4th at 726-727."

The defendants argue their policy is "neutral and generally applicable" because it "provides reasonable accommodations, absent undue hardship," "to employees who have disabilities, religious beliefs, or medical conditions that conflict with receiving a vaccine". (Doc. 14 at 5). The actions of the defendants show their policy is not neutral and generally applicable because they denied every request for religious exemptions while granting the majority of the

medical exemptions. (Doc. 1,¶ 49-58). This demonstrates that the policy is not neutral or generally applicable.

The defendants cite the Second Circuit decision of *We the Patriots, USA v. Hochul, 17 F.4th266* (2021), which was an order denying injunctive relief, for the argument that their policy is neutral and generally applicable. This matter is different because the SLPS policy includes religious exemptions – the district has admitted that it is possible to grant the exemption but has refused to grant the exemption to persons seeking the exemption for religious reasons while permitting the same exemption for secular reasons. "[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of `religious hardship' without compelling reason." *Fulton*, 141 S. Ct. at 1872*, citing Employment Div., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876. Defendants have given no compelling reason for denying the plaintiffs' exemption requests. Moreover, the Hochul decision conflicts with Supreme Court precedent and would likely be overturned if granted certiorari.

The *Hochul* case was denied review by the U.S. Supreme court, however, Justices Thomas, Alito and Gorsuch dissented, indicating that they would have granted certiorari and overturned the decision due to its failure to follow precedent. *Dr. A. V. Hochul*, 142 S. Ct. (2022). Justice Gorsuch's dissent shows the *Hochul* case is contrary to the guidance of the Supreme Court. He noted:

> Recently, a majority of this Court reiterated that a law loses its claim to general applicability when it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. Philadelphia*, 593 U. S. ___, ___, 141 S.Ct. 1868, 1877, 210 L.Ed.2d 137 (2021). That is exactly what New York's regulation does: It prohibits exemptions for religious reasons while permitting exemptions for medical reasons. And, as the applicants point out, allowing a healthcare worker to remain

unvaccinated undermines the State's asserted public health goals equally whether that worker happens to remain unvaccinated for religious reasons or medical ones."

*Dr. A v. Hochul,* 142 S. Ct. 552, 556 (2021)(Gorsuch, J., dissenting).

### c) Defendants' "suspect class" argument irrelevant

Defendants argue that strict scrutiny does not apply because they are not members of a "suspect class." Defendants admit, however, that strict scrutiny applies if their actions "impinges on a fundamental right explicitly or implicitly protected by the Constitution." (Doc. 14 at 4, citing *Rodriguez, 411 U.S. at 15*, and *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976)). Count I of the complaint clearly alleges the defendants violated the Plaintiffs' right to free exercise of religion protected by the free exercise clause of the First Amendment of the United States Constitution. (Doc. 1, ¶ 115-119). Count II of the complaint alleges the defendants violated the Plaintiffs' right to privacy, personal autonomy, and personal identity, all in violation of the Fourteenth Amendment of the U.S. Constitution. (Doc. 1, ¶ 140-142). These are fundamental rights protected by the Constitution and strict scrutiny applies. See *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)(applying strict scrutiny to executive order alleged to violate the Free Exercise Clause of the First Amendment).

### d) Defendants' "Fundamental Right to Work for the District" argument irrelevant

Defendants argue that the Plaintiffs' do not have a fundamental right to work in the district. They cite several case each of which relate to the application of the Due Process clause to whether an employee has a fundamental right to continued employment. Plaintiffs have not alleged a loss of a property right to continued employment. They are arguing the defendants policies and actions were in violation of their liberty rights including their right to Free Exercise

of Religion and their rights to Privacy, Personal Autonomy or Personal Identity. Therefore the defendant's arguments are irrelevant.

e) **Plaintiffs have a Fundamental Right to Privacy, Personal Autonomy or Personal Identity**

Defendants argue that plaintiffs do not have a Fundamental Right to Privacy, Personal Autonomy or Personal Identity citing the recent decision of *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022). *Dobbs* dealt with weather a woman has a right to seek an abortion to end another life. This case differs from *Dobbs* in that Plaintiffs are not seeking an abortion to end a life. In fact, many of the plaintiffs objected to receiving the vaccines because each of the available vaccines were either developed, tested or produced from fetal stem cell lines originating from aborted fetus. (See Doc. 1-5). The Plaintiffs are asserting their right to refuse medical treatment which is distinct from the desire to seek an abortion to terminate another's life.

A competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. *Cruzan v. Director, Mo. Dept. of Health*, 497 US 261, 278 (1990). This includes "a significant liberty interest" in avoiding the unwanted administration of drugs under the Due Process Clause of the Fourteenth Amendment. *Id.* citing *Washington v. Harper*, 494 U. S. 210, 221-222 (1990).

f) **The Vaccine Policy lacks a Real and Substantial Relation to the Districts stated interests**

Defendants argue that their vaccine policy was necessary to protect the health and safety of its students and staff and the education of the students. This fails for several reasons. The plaintiffs had taught and worked during the 2020-2021 school year and during the 2021-2022

school year up to the point the defendants terminated or suspended them in October 2022. Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing. The vaccinations were not necessary for employees who were given exemptions for medical reasons indicating the Plaintiffs could have been afforded the same exemption.

Defendants offer the hypothetical argument that "[i]f COVID-19 were to render a significant portion of the Staff unable to work, students would be deprived of an education." (Doc. 14 at 11). This argument fails because it is purely speculative. See *Brown v. Polk County, Iowa*, 61 F. 3d 650, 655 (8th Cir. 1995)(Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts.). Further, other school districts in the State of Missouri do not require the employees to receive exemptions to continue performing their job – they allow employees to opt out of COVID-19 vaccination requirements. (Doc. 1 ¶ 68). This shows the district may accommodate the plaintiffs at de minimis cost. See *Dr. A v. Hochul,* 142 S. Ct. 552, 557 (2021)(fact that every other state can satisfy its COVID-19 public health goals without coercing religious objectors to accept a vaccine undermines the argument that the defendant cannot do the same)(Kavanaugh, dissenting).

**2) Counts III and IV - Defendants cannot show undue hardship and cannot escape liability under Title VII and the MHRA**

Defendant argues that granting a religious accommodation to the plaintiffs would have created an "undue hardship". They admit it is their burden to prove an undue hardship. (Doc. 14 at 13, citing *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000)( "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to show that the accommodation [of the plaintiff's religious belief] would result in an undue hardship to the employer.").

Defendants do not go into detail as to what the undue hardship is other than reference general health concerns.

Any hardship asserted, furthermore, must be "real" rather than "speculative," "merely conceivable," or "hypothetical," *Brown v. Polk County, Iowa*, 61 F. 3d 650, 655 (8th Cir. 1995). An employer "stands on weak ground when advancing hypothetical hardships in a factual vacuum." *Id.* "Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts." *Id.* "Undue hardship requires more than proof of some fellow-worker's grumbling.... An employer ... would have to show ... actual imposition on co-workers or disruption of the work routine." *Id.* Undue hardship is "not defined within the language of Title VII. Thus, the precise reach of the employer's obligation to its employee is unclear under the statute and must be determined on a case-by-case basis." *Id.*

> "[I]t seems to this Court that "undue hardship" must mean present undue hardship, as distinguished from anticipated or multiplied hardship. Were the law otherwise, any accommodation, however slight, would rise to the level of an undue hardship because, if sufficiently magnified through predictions of the future behavior of the employee's co-workers, even the most minute accommodation could be calculated to reach that level. . . .
>
> Unless the statutory mandate [which requires reasonable accommodation] is to be rendered meaningless, it must be held to provide that until facts or circumstances arise from which it may be concluded that there can no longer be an accommodation without undue hardship, the employee's religious practices are required to be tolerated."

*Brown v. General Motors Corp.*, 601 F. 2d 956, 961 (8th Cir. 1979) citing *Haring v. Blumenthal*, 471 F.Supp. 1172, No. 78-0085 (D.D.C. April 10, 1979).

*Wangsness v. Watertown School Dist. No. 14-4, Etc.*, 541 F. Supp. 332, 335 (Dist.Ct.S.D. 1982) is instructive. In *Wangsness,* the Plaintiff, a junior high industrial arts teacher, sought leave for 9 days to attend a religious function. The board of education informed the plaintiff that he would be terminated if he attended the religious function. The Plaintiff attended the function and the district subsequently terminated him. The district argued that accommodating *Wangsness* "would set up a precedent for which there is no justification, and that if they allowed this absence, it would result in requests for many other types of absences and seriously affect the discipline of the school system, to say nothing of the effect upon the students of being required to have substitute teachers . . ." The district argued that it was not discriminating against *Wangness* and that it "[i]t is simply not intending to grant absences for any religious or personal reasons, and the same applies where the absence is for the purpose of attending a convention or other meeting, regardless of whether it is religious or non-religious in character."

The court found the testimony indicated that the school district's efforts to accommodate *Wangsness* consisted primarily of a meeting at which the school's administrators reviewed a list of available substitute teachers, and finding no qualified manual arts teacher on the list, the administrators decided to recommend to the board of education that *Wangsness'* request for leave be denied. Id. at 336. The Court viewed defendant's efforts to accommodate *Wangsness* as "minimal, at best," and that "[m]ore importantly, however, the board of education made it quite clear to *Wangsness* that it did not intend to accommodate his religious beliefs." It noted:

> "The letter reveals that in denying *Wangsness'* request for leave, the board was more concerned with setting a bad precedent for other types of leave requests than it was with accommodating the religious beliefs of

> *Wangsness*. The letter makes no mention of a fruitless attempt to find a qualified substitute which defendant school district now alleges. Nor does it mention any other attempts to accommodate plaintiff's religious beliefs. In fact, the letter states that the Board is "not intending to grant absences for any religious ... reasons." The position asserted by the board is in direct conflict with the obligation under 42 U.S.C. § 2000e et seq. to accommodate an employee's religious beliefs."

*Wangsness,* 541 F. Supp. 332, 3

The *Wangsness* court concluded that the evidence does not sufficiently prove that defendant school district attempted in good faith to accommodate plaintiff's religious beliefs. *Id.* at 337. The court also conclude that the district's use of the school's guidance counselor to teach classes during Wangsness' absence was not an undue hardship. *Id*. at 338. A seven day absence of Wangsness was not so detrimental that it had a substantial effect on the education program of the school district." *Id.* The court noted that the district's argument that substitute teachers could be detrimental to the educational process as "as the kind of hypothetical hardship which the *Brown* court rejected. *Id,* citing *Brown v. General Motors Corp*., 601 F.2d at 960.

*Edwards v. School Bd. of City of Norton, Va*., 483 F. Supp. 620 (Dist. Ct, W.D. VA, 1980) is also on point. In *Edwards,* the employee, a teacher's aid, required leave for five to ten days each year to observe her religious doctrine. The plaintiff's duties were to provide individual math and reading instruction to the students, especially the "educable mentally retarded and slow learners." The school district witnesses testified that the failure of the plaintiff to provide students day-to-day instruction resulted in great harm to the student's educational progress, that there were no substitutes available, and that other school personnel might complain because of the special treatment plaintiff would receive. *Id* at 626. The court found in favor of the Plaintiff, noting:

> "defendant failed to sustain its burden of proving undue hardship. While sympathetic to defendant's fears of undue hardship suffered by the students, such a finding cannot be made on mere opinion and speculation."

Id at 627.

Defendants argue Plaintiff's "claims of religious discrimination nonetheless fail because granting their requests would risk the District students' and staff members' health and safety, and would have subjected the District to staffing shortages and student absences that would result in substantial impairment of the students' educational rights provided for in the Missouri Constitution" (Doc. 14 at 13). Defendants' argument is the merely speculative and hypothetical which render it insufficient to qualify as undue hardship. *Brown v. Polk County, Iowa*, 61 F. 3d at 655. There is no evidence before the court to substantiate such claims. Defendants are raising factual issues that are outside the Plaintiff's Complaint and are therefore inappropriate for a motion to dismiss.

Though it is not plaintiff's burden to show lack of undue hardship, it is evident by the facts outlined in the Complaint that there is no undue hardship to defendants. Notably the defendants admitted they could provide the accommodation of twice per week testing because it states so in their own vaccination policy and the defendants expressed this to the Plaintiffs. (Doc. 1, ¶ 33; Doc. 1-1; Doc. 1-2). The vaccination policy listed three available exemptions: disability, religious, and medical. *Id.* This is also the same exemption as was given to persons seeking medical exemptions. (Doc. 1, ¶ 59 & 61). Defendants granted medical exemptions. (Doc. 1 ¶ 57). Defendants argue the test is different under the ADA for disability discrimination, however, they granted exemptions for medical exemptions which are not the same as disabilities under the ADA. "An individual does not prove that he or she has a disability simply by showing an impairment that makes it impossible to do his or her particular job without accommodation." *Nuzum v. Ozark Automotive Distributors,*

14

*Inc.*, 432 F.3d 839, 842 (8th Cir. 2005). For instance, SLPS denied the request for religious exemption of Plaintiff Wendy Huddleston, however it later granted her request for medical exemption she submitted and the defendants did not terminate or suspend her. The district admitted they could accommodate plaintiff Huddleston and allow her to continue working but it treated her medical request different than her religious request demonstrating differential treatment and discrimination against religion.

The de minimis cost is further shown by the districts ability to have the Plaintiffs teaching during the 2020-2021 school year when there was not testing or vaccination requirement. (Doc. 1, ¶ 64-67 ). They also were able to work and teach in the district from the beginning of the school year in August 2021 until they were terminated or suspended by the district. (Doc. 1 ¶ 92). Also, Charles Burton testified in his deposition that people whom the district granted medical exemptions were not required to begin submitting to the twice per week testing until "a week or so" before Charles Burton's deposition on December 2, 2021, indicating the district allowed unvaccinated teachers who were granted medical exemptions to continue teaching for approximately six weeks without twice per week testing after the district suspended and terminated the Plaintiffs. (Doc. 1 ¶ 94). Other school districts in the State of Missouri do not require the employees to receive exemptions to continue performing their job – they allow employees to opt out of COVID-19 vaccination requirements. (Doc. 1 ¶ 68). This shows the district may accommodate the plaintiffs at de minimis cost.

Most notably is the district eventually granted the religious exemption requests and allowed they to teach, demonstrating such an accommodation was "de minimis". (Doc. 1 ¶ 101-104). These facts defeat on the district's stance that accommodating the plaintiffs' religious exemption request posed any danger.

Respectfully submitted,

**KASPER LAW FIRM, LLC**

By: */s/ Kevin J. Kasper*

Kevin J. Kasper, #52171MO
Ryan P. Schellert, #56710MO
3930 Old Hwy 94 South - Suite 108
St. Charles, MO 63304
Ph: 636-922-7100
Fax: 866-303-2874
Email: KevinKasper@KasperLawFirm.net
Email: RyanSchellert@KasperLawFirm.net
*ATTORNEYS FOR PLAINTIFF*

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed with the court's electronic filing system which served copies on all attorney's of record.

/s/ Kevin J. Kasper