# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| WANDA BRANDON, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 4:22-CV-00635 SRC |
| v. ) | |
| ) | |
| BOARD OF EDUCATION OF THE CITY ) | |
| OF ST. LOUIS, ET AL. ) | |
| ) | |
| Defendants. ) | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

In their Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 15) ("Opposition"), Plaintiffs go to great lengths to convince this Court that it should not apply a deferential standard of review and, instead, should apply strict scrutiny. Notably, however, despite vociferously arguing that this Court should apply strict scrutiny to the District's Vaccine Policy ("Policy"), Plaintiffs completely fail to allege facts demonstrating that the Policy actually fails to pass a strict scrutiny. In other words, Plaintiffs do not even apply the very standard of review they purport this Court must use to determine whether Counts I and II of their Complaint state a claim.

While Defendants vehemently disagree that the Policy is subject to strict scrutiny review, the Policy nonetheless passes the strict scrutiny test.[1]

As to Plaintiffs' remaining claims of religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Missouri Human Rights Act ("MHRA"), they rely on completely inapposite cases to argue that increasing the risk of exposing students and staff to a deadly virus—and having significant portions of staff unable to work because of government-mandated close-contact

---

[1] Likewise, the Policy easily survives rational basis review, which is the appropriate standard of review in this case.

{00531263.5}　　　　　　　　　　　　1

quarantines—is not an undue hardship. Plaintiffs' arguments are disingenuous and miss the mark on both legal and factual bases.

I. **Plaintiffs Rely Upon Cases Inapposite to the Case at Bar to Argue Against a Deferential Standard of Review.**

    A. **Plaintiffs misconstrue the applicability of *Heights*.**

Apparently conceding that a deferential standard of review applies to government action taken during a public health crisis, Plaintiffs argue that COVID-19 did not present a public health crisis in August 2021, when the District announced its Policy. In support of that argument, Plaintiffs point to an Eighth Circuit opinion that held a landlord opposing a statewide eviction moratorium stated a claim under the Contracts Clause and the Takings Clause. Doc. 15 at §1(a) (citing *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 726–727 (8th Cir. 2022)). The *Heights* Court suggested, in *dicta*, that the deferential standard of review in *Jacobson v Massachusetts*, 197 U.S. 11 (1905), may not apply if and when a public health crisis has evolved out of its immediate stages.

Plaintiffs' reliance on *Heights* is misguided and wholly inappropriate. First and foremost, *Heights* has little, if any, applicability to this case. This case involves a policy to vaccinate public school employees against a highly contagious disease. As discussed *infra*, courts have consistently upheld public school vaccine policies under rational basis review—even when there is no public health emergency. *See, e.g., Workman v. Mingo County Bd. of Educ.*, 419 Fed.Appx. 348, 356 (4th Cir. 2011). Further, courts have recognized that vaccination **directly** addresses the communicable nature of a disease. *See Bauer v. Summey*, 568 F.Supp.3d 573, 595 (D.S.C. 2021) (vaccination is "the most highly regarded" tool to address the spread of COVID-19 after "the first several uncertain months" of the pandemic). Rather than dealing with an employment policy designed to curb the spread of a potentially fatal disease and enable the education of children, *Heights* involved the issue of whether a landlord could evict a tenant during the pandemic.

In contrast, *Heights* concerned **a tangential tool** to address the pandemic—namely prohibiting landlords from evicting their tenants. For this reason alone, Plaintiffs' reliance on *Heights* is misguided and wholly inappropriate. Plaintiffs, in unsupported and conclusory fashion, use *dicta* from *Heights* to argue that, because the Policy did not go into effect until after the plaintiff in *Heights* filed his case, there was no public health crisis when the District implemented the Policy and, as such, strict scrutiny applies.[2] However, the *Heights* Court did **not** hold that strict scrutiny applies after the immediate crisis—it simply recognized that *Jacobson* was decided before the traditional standards as we now know them (e.g., rational basis and strict scrutiny) were created. Indeed, the Court acknowledged that *Jacobson* applied what is now considered the rational basis standard. *Id.* (citing Justice Gorsuch's concurrence in *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63 (2020)).

*Heights* also did **not** overrule the Eighth Circuit's decision in *In re Rutledge*, which held that a failure to "meaningfully apply the Supreme Court's framework for reviewing constitutional challenges to state action taken in response to a public health crisis" is an abuse of discretion. 956 F.3d 1018, 1027 (8th Cir. 2020). Rather, for purposes of the facts and claims that existed in *Heights* (i.e., Contracts Clause and Takings Clause claims), the Eighth Circuit suggested *Jacobson* deference may not apply to the entirety of the plaintiff's alleged damages. *Heights*, 30 F.4th at 727.

At the time the District implemented its Policy, the City of St. Louis Department of Health ("the DOH's") Orders required quarantines of fourteen (14) days for unvaccinated individuals **every time** they came into close contact with someone who had tested positive for COVID-19, thus rendering a significant portion of the District's staff unavailable to work at any given time. City of St.

---

[2] Plaintiffs also argue that the Policy was "enacted" in August 2021, but did not "go into effect" for two (2) more months, proving there was no emergency situation. Plaintiffs completely misstate the facts. The Policy went into effect the day it was announced—on August 25, 2021. Staff simply had until October 15, 2021 to provide proof they were fully vaccinated, giving them time to actually obtain the vaccine. Doc 1-2.

Louis School Systems Collaborative Re-entry Guidelines, pp. 5–6, attached hereto as **Exhibit AA**.[3] In other words, until January 2022, when the City reduced the quarantine time for close contacts[4] and there had been time for children ages 5–11 to be vaccinated,[5] the District indeed was in the midst of a public health crisis of the very kind present in *In re Rutledge*; except instead of a shortage of personal protective equipment, the District had a shortage of staff and had to have staff who would not be subjected to prolonged quarantines for close-contact situations (i.e., staff who were vaccinated).

Plaintiffs refer this Court to *Roman Catholic Diocese of Brooklyn v. Cuomo* in support of their claim that a public health crisis no longer existed when the District implemented the Policy, but the Supreme Court's application of strict scrutiny in that case in no way was dependent on whether a public health crisis existed—and the Court most certainly did not deny the existence of the crisis. Rather, the Court correctly applied strict scrutiny to the executive order at issue because the law applied **only** to houses of worship and, as such, was not "neutral and of general applicability." 141 S.Ct. 63, 66–67 (2020). Here, the Policy applies to **all** staff—regardless of their religion or religious beliefs—and no secular exceptions were made, other than for those whose lives and health would be put at risk by taking the vaccine.

Notably absent from Plaintiffs' argument that COVID-19 no longer presents a public health crisis is any reference to the Supreme Court's opinion in *Biden v. Missouri*, in which the Court

---

[3] In addition to the Complaint, courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" without converting a motion to dismiss into one for summary judgment. *Zean v. Fairview Health Services*, 858 F.3d 520, 526 (8th Cir. 2017) quoting *Miller v. Redwood Toxicology Lab, Inc.* 688 F.3d 928, 931 n.3 (8th Cir. 2012).

[4] *See* City of St. Louis and Dept. of Health of City of St. Louis, Summary of Current City of St. Louis Department of Health COVID-19 Guidance for Isolation, Quarantine and Transmission-Based Precautions, p. 6, attached hereto as **Exhibit BB**.

[5] The U.S. Food and Drug Administration ("FDA") authorized the two-dose Pfizer-BioNTech COVID vaccine for children 5–11 on October 29, 2021. *See* Press Release, FDA, FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age (Oct. 29, 2021), https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age, attached hereto as **Exhibit CC**.

recognized that the virus remains "a highly contagious, dangerous, and . . . deadly disease." 142 S.Ct. 647, 652 (2020). The Supreme Court issued the *Biden* opinion in January 2022—several months after the District implemented its Policy. While the existence of a public health crisis did not determine the *Biden* Court's deferential standard of review, the Court's recognition of the lethal effects of the virus and the validity of the Secretary of Health's finding that a "vaccine mandate will substantially reduce the likelihood that healthcare workers will transmit [COVID-19] to their patients" most certainly evidences a recognition that a public health crisis still existed at the time of the decision. *Id.*

> B. **Regardless of Whether a Public Health Crisis Exists, Deferential Review Applies to State Action Concerning Education.**

Plaintiffs also conspicuously fail to address *San Antonio Independent School Dist. v. Rodriguez*, in which the Supreme Court made clear that courts do not have the "specialized knowledge and experience" to interfere with "difficult questions of educational policy." 411 U.S. 1, 42 (1973). "The very problems of . . . managing a . . . public school system suggests that 'there will be more than one constitutionally permissible method of solving them,' and that, **within the limits of rationality**, 'the legislature's efforts to tackle the problems' should be entitled to respect." *Id.* (emphasis added). Plaintiffs' failure to address this case is a tacit admission that deferential review applies to decisions concerning education policy.

*Rodriguez* did not involve a public health crisis, yet the Supreme Court recognized that the States were in a better position—and had the authority to—evaluate and implement methods and policies that are most effective in providing public education to their citizens. The Court reviewed the fiscal and educational policy at issue simply to determine whether it was "within the limits of rationality," and found it was, even though the Court insinuated it did not agree with the State's education funding scheme. *Id.* at 58.

> "The consideration and initiation of fundamental reforms with respect to state taxation and education are matters reserved for the legislative processes of the various States, and we do no violence to the values of federalism and separation of powers by staying our hand . . . .

> [T]he ultimate solutions must come from the lawmakers and from the democratic pressures of those who elect them."

*Id. See also, State ex rel. O'Bannon v. Cole*, 119 S.W.424, 428 (Mo. 1909) (affirming the right of Missouri school boards to require all students to be vaccinated during a smallpox epidemic).

Relying on the expertise of the Centers for Disease Control and Prevention ("CDC"), the Occupational Safety and Health Administration ("OSHA"), and the local expertise of its healthcare partners and the Acting Director of Health for the City of St. Louis, the elected members of the District's Board of Education determined that the Policy was the most effective way to protect the health of the staff and students, and minimizing quarantines was the only way the District could continue with in-person learning. *See* Doc. 1-2. Pursuant to *Rodriguez*, this Court's review must be limited to whether the Policy is "within the limits of rationality," which it undoubtedly is, given that the DOH continued to require unvaccinated staff to quarantine for 14 days after a close contact, and such quarantines "represented the single greatest obstacle to in-person learning" during the 2020–2021 school year (only half of which—second semester—consisted of in-person learning). *Id.*

### C. Plaintiffs Fail to Counter the Policy's Neutrality and General Applicability.

The standard of review analysis does not end with public health crises or education policies. Even if this Court rejects the deferential standard of review required under *Jacobson* and *In re Rutledge* for State action during public health crises, and the deferential standard of review required under *Rodriguez* for State action concerning education, a deferential standard **still** applies because the Policy is facially neutral and generally applicable. *See* Defendants' Memorandum in Support of Their Motion to Dismiss (Doc. 14) ("Motion") at §I(A)(2).

Plaintiffs argue that, under *Fulton v. City of Philadelphia, Pennsylvania*, the Policy is not generally applicable and, as such, is subject to strict scrutiny. Doc. 15 at §1(b). In *Fulton*, the Supreme Court held that the City's requirements for foster agencies were not generally applicable because it had the discretion to make **individual** exceptions to the mandate they claimed was generally applicable. 141

S.Ct. 1868, 1878 (2021) (citing *Sherbert v. Verner*, 374 U.S. 398 (1963) and analyzing *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990)).

Plaintiffs' reliance on *Fulton* is misplaced. Unlike the State action in *Fulton*, Plaintiffs do not allege that the District made individualized exceptions to the Policy to deny their individual requests for religious accommodation. Rather, Plaintiffs allege that the District categorically denied **all** religious exemption requests, then granted requests at a later date. Doc. 1 at ¶¶ 48-50, 101. Categorical exemptions for religious or medical issues do not render the Policy less neutral or generally applicable in the standard of review analysis. *See, e.g.*, *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2nd Cir. 2021) ("[A]n exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons.")

The facts of this case also distinguish it from *Tandon*, where the Supreme Court applied strict scrutiny to a California statute that placed restrictions on private gatherings but included exceptions for various secular activities while providing no such exceptions for religious gatherings. *Tandon v. Newsom*, 141 S.Ct. 1294 (2021). Plaintiffs nonetheless cite *Tandon* for its language that strict scrutiny applies any time the State "treat[s] any comparable secular activity more favorably than religious exercise." Doc. 15 at §1(b) (quoting *Tandon*, 141 S.Ct. at 1296). As Plaintiffs correctly point out, under *Tandon*, "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* Here, requests for medical exemptions and religious exemptions are not comparable. If vaccination poses a medical issue for a staff member, requiring that staff member to be vaccinated is likely to result in the staff member becoming ill and consequently unable to work, thereby interfering with the District's ability to provide an education for its students. Denying medical exemptions would not further the District's goals of keeping its staff healthy, and keeping its classrooms and schools properly staffed.

All of the other cases cited by Plaintiffs are similarly off-point. In both *Roman Catholic Diocese of Brooklyn v. Cuomo* and *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, the State actions at issue **specifically targeted religious activities**. 141 S.Ct. 63 (2021); 508 U.S. 520 (1993). In *U.S. Navy Seals 1–26 v. Biden* and *Doster v. Kendall*, the military's policies were not dictated by a close-contact mandate that would render its unvaccinated service members subject to extended quarantines and ineligible for duty. 27 F.4th 336 (5th Cir. 2022); 1:22-cv-84, Order March 31, 2022 (S.D.Ohio 2022) (as cited by Plaintiffs). The District, on the other hand, **was** operating under such a mandate, imposed by the DOH, so it took the measures it determined to be most effective and reasonable to keep its schools staffed. For this reason alone, the cases cited by Plaintiffs are altogether distinguishable and inapplicable to the case at bar.

### D. Plaintiffs Fail to Show They are Members of a Suspect Class or that the Policy Burdens a Fundamental Right.

Should this Court decide that a deferential standard of review is **not** required under *Jacobson* and *In re Rutledge* (public health crisis) and/or *Rodriguez* (education policies), and finds the Policy is not generally applicable, it still must find that Plaintiffs were members of a suspect class **or** that the Policy violated a fundamental right before applying strict scrutiny. *Rodriguez*, 411 U.S. at 15. Plaintiffs argue that the District's arguments that Plaintiffs are not members of a suspect class and the Policy does not impinge on a fundamental right are "irrelevant." Doc. 15 at §1(c)–(d).

Because Plaintiffs do not dispute that they are **not** members of a suspect class, the District will rest on its arguments set forth in its Motion. Doc. 14 at §1(A)(2)(b). Plaintiffs have conceded this issue by failing to respond to it in their Opposition.

As explained in the District's Motion, no fundamental right is affected by the Policy. While Plaintiffs go to great lengths to convince this Court that the Policy violates their fundamental rights to Free Exercise and to Privacy, Personal Autonomy, or Personal Identify, such arguments are red herrings. The fact is, the District never forced Plaintiffs to be vaccinated. There were no criminal

sanctions at issue, no one prevented Plaintiffs from moving freely among the general public, and certainly no one forcibly administered the vaccine without Plaintiffs' consent. Rather, the District simply required a COVID-19 vaccine as a condition of employment **with the District**. Thus, the only "right" infringed upon was Plaintiffs' ability to work **for the District**. Notably, the Policy did not prevent Plaintiffs from practicing their professions with other school districts or elsewhere—it simply required vaccination if Plaintiffs chose to work for the District. Indeed, Plaintiffs admit that other school districts allowed employees to opt out of receiving the COVID-19 vaccine. Doc. 1 at ¶68. The District's Policy most certainly did not prevent them from working in any one of those districts.

Contrary to Plaintiffs' blanket statement otherwise, the fact that they have no fundamental right to employment with the District not only is relevant—it is decisive. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976) (applying rational basis review to state retirement policy); *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997) (if an interest is not fundamental, rational-basis review applies). The only liberty implicated by the Policy is Plaintiffs' right to work, but while "[t]he Due Process Clause secures the liberty to pursue a calling or occupation," it does not provide "the right to a specific job." *Maniscalco v. New York Dept. of Educ.*, 563 F.Supp.3d 33, 38 (E.D.N.Y. 2021). *See also*, *Bauer*, 568 F.Supp.3d at 592 ("Plaintiffs' overly general characterization of the rights at issue as "bodily integrity" and "privacy" falls short . . . [r]ather, a more appropriate description is plaintiffs' interest in continued employment with defendants while unvaccinated for COVID-19."); *Norris v. Stanley*, 567 F.Supp.3d 818m 821 (W.D.Mich. 2021) (no fundamental right to decline a vaccination).

Plaintiffs do not have a fundamental right to work for the District; therefore, they fail to state a claim in Counts I and II.

## II. The Policy Survives Even Strict Scrutiny.

Before applying strict scrutiny, this Court first must find all of the following:

1. COVID-19 did not present a public health crisis in August 2021 (*See supra* §1(A));

2. the Policy is not an educational policy left to the expertise of the State (*See supra* §1(B));

3. the Policy is not generally applicable because it granted medical exemptions before it granted religious exemptions (*See supra* §1(C)); **and**

   a. Plaintiffs are members of a suspect class, **or**

   b. Plaintiffs have a fundamental right to work for the employer of their choice. (*See supra* §1(D)).

That being said, even if the Court makes all of these findings, Plaintiffs nonetheless fail to state a claim in Counts I and II because the Policy survives strict scrutiny.

The Supreme Court has recognized that "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn*, 141 S.Ct. at 67. Even before COVID-19, courts have long recognized that vaccine mandates serve the compelling interest of fighting the spread of disease. *See, e.g.*, *Prince v. Commonwealth of Mass.*, 321 U.S. 158, 166 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease . . . ."); *Zucht v. King*, 260 U.S. 174, 177 (1922) (recognizing police power of State to implement health regulations); *Workman*, 419 Fed. Appx. at 356 ("The Supreme Court has consistently recognized that a state may constitutionally require school children to be immunized."); *Bauer*, 568 F.Supp. 3d at 594 ("Indeed, the right to work without a vaccine is far less compelling than the right for children to attend school without a vaccine because the state requires children to attend school."). Based upon the foregoing, the District unquestionably has a compelling interest in stemming the spread of COVID-19 within its schools.

Further, "the efficient functioning of government offices is a paramount public interest," and "a public employee by necessity must accept certain limitations on his or her freedom." *Grutzmacher v. Howard County*, 851 F.3d 332, 342 (4th Cir. 2017) (citing *Connick v. Myers*, 461 U.S. 138 (1983) and

*Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968)). The District has a compelling interest in the efficient functioning of its schools, which provide an education guaranteed under the Missouri Constitution.

Although the District has been unable to locate a single instance in which a court applied strict scrutiny in a case involving public school vaccine mandates (or any case with facts analogous to those here), some courts nonetheless have opined that such mandates would survive strict scrutiny even if the more restrictive standard of review applied. In *Workman*, the Fourth Circuit held that the question of the appropriate standard of review concerning a public school vaccine mandate was irrelevant because "even assuming for the sake of argument that strict scrutiny applies . . . West Virginia's vaccination laws withstand such scrutiny." 419 Fed.Appx. at 353; *see also Brown v. Smith*, 24 Cal.App.5th 1135, 1145 (2018) ("Even if we were to assume that laws requiring vaccination substantially burden the free exercise of religion and therefore merit strict scrutiny, plaintiffs' claim fails.").

Likewise, in *Bauer*, the Court considered whether mandates requiring that city, county, and fire district employees be vaccinated against COVID-19 are unconstitutional. After conducting a thorough analysis as to the proper standard of review and holding that the mandates withstood rational basis review, the Court nevertheless noted that the mandates likely would survive strict scrutiny. *Bauer*, 568 F.Supp.3d at n.8.

In this case, the facts are even more compelling that the Policy is narrowly tailored. Unlike any recorded cases to date—much less, those cited by Plaintiffs—a government mandate had resulted in a critical staff shortage. In August 2021, when the District implemented the Policy, the DOH required all school personnel and students who were identified as "close contacts" to quarantine for 14 days. Doc. 1-3, Burton dep. 22: 15–20. When staff are rendered unavailable to teach or otherwise work on school grounds for 14 days **every time** they come into contact with anyone who has tested positive for COVID-19, the District's ability to educate its students is severely crippled.

As such, not only was the Policy necessary to prevent the spread of COVID-19—the District would not have been able to provide students with a quality education without some semblance of continuity and availability of its staff. Further, as soon as the City reduced its close-contact quarantine requirement for unvaccinated staff from 14 days down to 5 days, and students ages 5–11 had time to become fully vaccinated (and, thus, a significant portion of the District's population no longer was vulnerable), the District granted requests for religious exemptions. It is difficult to imagine how the District could have more narrowly tailored the Policy.

Because the Policy is narrowly tailored to support compelling interests, Plaintiffs fail to state a claim in Counts I or II of their Complaint, and those claims should be dismissed.

### III. Plaintiffs' Arguments that the District Would Not Have Suffered an Undue Hardship by Granting Up to 200 Religious Exemptions in the Fall of 2021 are Unavailing.

As set forth in their Motion, the District would have suffered an undue hardship in granting requests for religious exemptions in the Fall of 2021 because 1) leaving such a large number of unvaccinated staff in schools would have put the health and safety of students and other staff at risk; and 2) the District—still under the City mandate requiring 14-day quarantines for unvaccinated close contacts—would have had to operate with a perpetual staff shortage. Doc. 14 at §II.

Plaintiffs make a few unavailing arguments that the District would not have suffered these hardships. Namely, Plaintiffs argue that the hardships identified by the District are speculative and hypothetical, and that the District would not have suffered an undue hardship by granting the religious exemptions in Fall 2021 because 1) the District granted medical exemptions; 2) other school districts did not require vaccines; and 3) the District eventually granted the religious exemptions.

In support of their argument that the undue hardships identified by the District were speculative and hypothetical, Plaintiffs rely on *Wangsness v. Watertown School Dist. No. 14–4, Etc.* and *Edwards v. School Bd. of City of Norton, Va.* Both of these cases involved single plaintiffs who requested a few days of leave to attend religious functions. 541 F.Supp. 332 (D.S.D. 1982); 483 F.Supp. 620

(W.D.Va. 1980). In other words, the school districts in those cases would have been required to accommodate only **one** employee's absence for a relatively brief isolated occasion. Conversely, the District was beholden to a DOH mandate that would have resulted in a revolving door of extended absences of **150–200** unvaccinated staff members (in addition to staff members who tested positive for COVID-19 or were absent for reasons unrelated to the virus). Further, as Plaintiffs even highlight, in *Wangsness* and *Edwards*, the school districts based their undue burden analysis in part on how they imagined other staff might respond—speculating that granting the plaintiffs' accommodation requests could result in other staff requesting permission for extended absences. Doc. 15 at §2.

The District's hardship was not speculative. In Spring 2021—the first semester since March 2020 in which the District offered in-person learning and before vaccines had become widely available—the District actually experienced the very hardships that kept it from granting religious exemptions in Fall 2021. Doc 1-3, Burton Dep. at 21:4–23:20 (14-day quarantines causes hundreds of students and staff to be absent every week). The District **did** experience extreme staff shortages due to close-contact quarantines. The District **did** experience COVID-19 infecting its staff and students. Contrary to Plaintiffs' disingenuous argument to the contrary, that the District managed to survive the Spring 2021 semester by no means is evidence that it did so without experiencing extreme hardship.

To that end, the fact that other school districts did not have vaccine mandates is completely irrelevant to the District's situation because no other school district was subject to the DOH's Orders. The District's Policy was based on the unique quarantine requirements of the City's DOH.

The fact that the District granted medical exemptions in Fall 2021 is equally irrelevant because 1) only 40–50 individuals requested medical exemptions, as compared to the 150–200 who requested religious exemptions (Doc 1-3, Burton Dep. At 40:18–23; 54:13–16); 2) denying medical exemption requests was counterproductive to the District's goals of keeping staff healthy and available to work

(*supra* at §I(C)); and 3) the standard for proving undue hardship for disability accommodations is more stringent than that for proving undue hardship for religious accommodations. *See* Doc. 14 at §II.

Finally, Plaintiffs' argument that the District's eventual granting of Plaintiffs' religious exemption requests is evidence of the "de minimis" cost of the accommodation is simply absurd. Under this theory, Plaintiffs essentially argue that **never** granting religious exemption requests would pass legal muster, but granting the exemptions when circumstances have changed (i.e., the DOH's close-contact quarantine mandate was reduced to 5 days for unvaccinated individuals, and children ages 5–11 were able to be fully vaccinated) is proof of illegality. To find as such would be nonsensical. Moreover, such a finding essentially would dictate that the District's compliance with the Americans with Disabilities Act ("ADA") equates to a Title VII violation.[6] *See* Motion, §II.

In *Together Employees v. Mass General Brigham Inc.*, the District Court of Massachusetts recently addressed the very arguments raised by Plaintiffs and flatly rejected them. 2021 WL 5234394 (D.Mass. 2021). In that case, as here, the employer ("MGB") implemented a vaccine mandate applicable to all employees, which stated that employees who did not comply with the policy would be placed on unpaid leave, then terminated. *Id.* at *1. The plaintiffs claimed the policy violated Title VII and the ADA. *Id.* In holding that MGB made a showing of undue hardship, the Court noted 1) "considerations [for undue hardship] include . . . [indirect costs] related to health and safety"; 2) MGB was in the business of caring for vulnerable populations, and vaccines reduced the risk of exposing them to COVID-19; 3) a "defendant does not have to show that it eliminated all risk from all possible sources of COVID-19 infection"; and 4) "in determining undue hardship, it is appropriate to consider aggregate effects when multiple employees are granted the same accommodation." *Id.* at *11–14 (citing the U.S. Equal Employment Opportunity Commission, What You Should Know About COVID-19

---

[6] Plaintiffs also argue that the fact that the District did not distinguish between "Medical" and "Disability" exemption requests is evidence of their violation of Title VII; however, the ADA Amendments Act of 2008 explicitly states, "Whether an individual has a [disability] . . . should not demand extensive analysis." 29 C.F.R. §1630.2.

and the ADA, the Rehabilitation Act, and Other EEO Laws: §L (2021); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977); *Does 1–6 v. Mills*, 16 F.4th 20, 35–36 (1st Cir. 2021); *Robinson v. Children's Hospital Boston*, 2016 WL 1337255 at *10 (D.Mass. 2016)).

Granting the religious exemption requests would have created an undue hardship in large part because of the significant number of requests submitted (150–200). Doc 1-3, Burton Dep. at 40:18–23. The District relied on national and local health experts to determine that the Policy would limit the spread of COVID-19 and protect the health and safety of vulnerable staff (*e.g.,* those who are immunocompromised or not able to receive the vaccine for medical reasons) and students (a majority of whom were ineligible to receive the vaccine), and determined that allowing such a significant number of staff to remain unvaccinated in Fall 2021 would create an undue hardship in terms of health and safety. *See* Doc. 1-1. Also, despite Plaintiffs' unsupported arguments to the contrary, the District's accommodation of employees with medical conditions in no way contradicts its finding that granting 150–200 religious exemptions would create an undue hardship.

Based upon the foregoing, Plaintiffs fail to state a claim in Counts III and IV of their Complaint because the exhibits to Plaintiffs' Complaint establish the District would have suffered an undue hardship in granting Plaintiffs' exemption requests in Fall 2021, yet accommodated their beliefs as soon as the undue hardship passed in January 2022.

## CONCLUSION

Plaintiffs' Opposition does not provide a single legally viable argument that the Policy violated their Constitutional rights, Title VII, or the MHRA. As such, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

**MICKES O'TOOLE, LLC**

By:    */s/ Melanie A. Renken*
     Vincent D. Reese, # 49576(MO)
     vreese@mickesotoole.com
     Melanie A. Renken, #59973(MO)
     mrenken@mickesotoole.com
     Jasmine Y. McCormick, #66386(MO)
     jmccormick@mickesotoole.com
     12444 Powerscourt Drive, Suite 400
     St. Louis, Missouri 63131
     Telephone: (314) 878-5600
     Facsimile: (314) 878-5607

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September, 2022, a true and correct copy of the foregoing was filed with the Court's electronic filing system and thereby served via electronic mail to all counsel of record:

KASPER LAW FIRM, LLC
Kevin J. Kasper
Ryan P. Schellert
3930 Old Hwy 94 South - Suite 108
St. Charles, MO 63304
Ph: 636-922-7100
Fax: 866-303-2874
KevinKasper@KasperLawFirm.net
RyanSchellert@KasperLawFirm.net

*Attorneys for Plaintiff*

                                      */s/ Melanie A. Renken*