UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| WANDA BRANDON, ET AL., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | Case No. 4:22-CV-00635 SRC |
| v. | ) |  |
|  | ) |  |
| BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

### DEFENDANT BOARD OF EDUCATION OF THE CITY OF ST. LOUIS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

COMES NOW Defendant Board of Education of the City of St. Louis (the "District"), by and through their undersigned counsel, and submit this Memorandum of Law in support of its Motion for Judgment as a Matter of Law or, in the alternative, Motion for New Trial:

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 50(b), a party may renew its motion for judgment as a matter of law after trial and may include an alternative or joint request for a new trial under Federal Rule of Civil Procedure 59. Fed. R. Civ. P. 50(b) "The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." *See* Fed. R. Civ. P. 59(a)(1)(A). The court may allow judgment on the verdict, order a new trial, and direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). On June 25, 2025, at the close of Plaintiffs' evidence, the District filed its Motion for Judgment as a Matter of Law (Docs. 338 and 339), which was denied by this Court. In this renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b), the District hereby incorporates by reference its Motion for Judgment as a Matter

1

of Law and Memorandum of Law in Support of its Motion (Docs. 338 and 339) (collectively "Original Motion") as if fully set forth herein.

## DISCUSSION

I. **THE DISTRICT SHOULD HAVE JUDGMENT AS A MATTER OF LAW ON PUNITIVE DAMAGES, OR IN THE ALTERNATIVE, THE PUNITIVE DAMAGES SHOULD BE REMITTED.**

As the Eighth Circuit has noted, "Plaintiffs who seek punitive damages in employment discrimination cases face a formidable burden. Both Title VII and the Missouri Human Rights Act (MHRA) permit the award of punitive damages in a narrow class of cases." *Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 495 (8th Cir. 2003). Plaintiffs failed to meet this burden at trial. The Court should issue judgment as a matter of law on punitive damages in the District's favor, or alternatively remit the amount.

   A. **The Court erred in instructing the jury on punitive damages because Plaintiffs failed to make a submissible case.**

Plaintiffs failed to present sufficient evidence to support an entitlement to punitive damages, and therefore it was an error to instruct the jury on punitive damages. In order to collect punitive damages under the MHRA,[1] Plaintiffs must show that the District's conduct was "outrageous because of its evil motive or reckless indifference" to their rights, in a manner that would "shock the conscience." *Lawrence*, 340 F.3d 486, 495-96 (8th Cir. 2003); *Varner v. National Super Markets, Inc.*, 94 F.3d 1209, 1214 (8th Cir. 1996) (citations omitted); *see also Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 804 (8th Cir. 1994). When there is insufficient evidence of "actual outrageousness," it is an error to submit the issue of punitive damages to a jury

---

[1] Punitive damages were unavailable against the District on the other claims, which arose out of Section 1983 and Title VII. *See City of Newport v. Fact Concerts Inc.*, 453 U.S. 247 (1981) (Section 1983); *Brenner v. Sch. Dist. 47*, No. 86-1343 C (2), 1987 WL 18819, at *2 (E.D. Mo. Jan. 12, 1987) (Section 1983); *Doe AR v. Delles*, No. 1:20CV202 SNLJ, 2020 WL 7041808, at *2 (E.D. Mo. Dec. 1, 2020) (Section 1983); 42 U.S.C. § 1981a(b)(1) (Title VII).

2

under the MHRA, and the award must be set aside. *Nelson*, 26 F.3d at 803-04 (reversing jury award of punitive damages under the MHRA despite upholding award of compensatory damages); *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 636-37 (8th Cir. 1998) (same); *Lawrence*, 340 F.3d at 496-97 (same). Even a "willful" violation of an antidiscrimination statute, by itself, is insufficient. *Nelson,* 26 F.3d at 803-04.

Here, there is insufficient evidence to support the submission of punitive damages to the jury. Despite more than two weeks of trial, the Plaintiffs failed to submit *any* evidence that the decision-makers who implemented the District's vaccination requirements acted out of any religious animus or made any negative comments, used any crude names, slurs, offense language, or physical altercations related to any of the Plaintiffs' stated beliefs about COVID-19 vaccination, or the Plaintiffs' unvaccinated status. *Lawrence*, 340 F.3d at 496-97 (finding insufficient evidence of outrage for punitive damages despite trial testimony of multiple comments related to plaintiff's protected characteristic in Title VII and MHRA lawsuit). To the contrary, all of the evidence at trial demonstrated that the District enacted and enforced its COVID-19 vaccination policy (the "Policy") because it wanted to reduce the number of COVID-19-related quarantines and infections. Notably, at the time it enacted the Policy, the District publicly declared that it was instituting the Policy because COVID-19-related quarantines were the largest obstacle to maintaining in-person education during the prior school year. (Tr. Ex. 215). Further, the evidence at trial demonstrated that unvaccinated individuals were subject to more stringent quarantine requirements. The evidence also established that the District's confirmed employee vaccination count increased by over eight hundred following enactment and enforcement of the Policy. Finally, the evidence demonstrated that as soon as the quarantine requirements for unvaccinated individuals became less stringent, the District immediately granted religious exemptions to the Policy. In short, there is

simply no evidence that the District's actions were "outrageous" or done out of "evil motive" to support the submission of punitive damages to the jury.

Moreover, it was an error to instruct the jury on punitive damages because there was no evidence that the District recklessly disregarded the Plaintiffs' rights when it decided to deny religious exemptions from October 2021 to January 2022. At trial there was undisputed evidence about the onset of the COVID-19 Delta Variant in the late summer and Fall of 2021. Whether denying a religious exemption to a vaccination requirement during an active outbreak of a new COVID-19 variant in the middle of the COVID-19 pandemic violates an employee's rights was at best unclear at the time. (*See* Doc. 229 at 53-56, 67-68). Before trial, former Defendants Dr. Kelvin Adams and Charles Burton (the "Individual Defendants") argued that they were entitled to qualified immunity, which "shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights." (*Id.* at 53) (*citing Thurmond v. Andrews*, 972 F. 3d 1007, 1011 (8th Cir. 2020)). This Court agreed, stating "Plaintiffs have failed to point to any precedent, and this Court has not found any precedent, to suggest Plaintiffs' rights to be free from a COVID-19 vaccination mandate were clearly established in October 2021 when Adams and Burton decide to enforce Policy 4624….On the contrary, the legal landscape in October 2021 left plenty of room for debate." (*Id.* at 54).

Indeed, the law at the time arguably supported the view that the implementation of the policy was lawful. The District's policy explicitly stated that it would only grant religious exemptions "absent an undue hardship." Tr. Ex. 192. At the time, the controlling case law demonstrated that an employer could lawfully establish an "undue hardship if accommodating an employee's religious beliefs would require the employer to **"bear a more than de minimis cost."** *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977) (emphasis added); *Harrell v.*

4

*Donahue*, 638 F.3d 975, 980 (8th Cir. 2011) (applying *Hardison* standard). Notably, the Eighth Circuit continued to apply this very standard in 2021, when the District made its decision. *See e.g., Obregon v. Cap. Quarries Co., Inc.*, 833 F. App'x 447, 448. (8th Cir. 2021).[2]

The evidence at trial unquestionably demonstrated that the District would have incurred more than a *de minimis* cost in granting over a hundred additional religious accommodation requests to unvaccinated employees. The District employees testified extensively about the difficulties it faced employing unvaccinated individuals, including: more stringent quarantine requirements for unvaccinated employees, the need to constantly and unexpectedly find coverage for quarantined employees, the labor, time and expense associated with contact tracing, the increased costs and practical difficulties associated with having to allocate additional staff to be in-person with students while a quarantined teacher attempted to teach remotely, and the practical difficulties of monitoring, tracking, and providing COVID-19 testing to employees who were granted exemptions. The District's expert witness also testified to the health and safety risk that unvaccinated individuals posed to others during that stage of the pandemic, as they were more likely to become infected with COVID-19 and more likely to transmit the virus to others at the time. Based upon this factual evidence, the District employees reasonably believed that they could lawfully deny the Plaintiffs' request without violating the law as the District would have unquestionably bore more than a *de minimis* cost. There is no evidence that the District acted with reckless indifference in relying upon the longstanding "more than *de minimis* cost" standard when it made its decision because the District could not anticipate that over twenty months *after* it made

---

[2] This standard was not altered until June 29, 2023, over twenty months after the District denied Plaintiff's religious exemptions and over almost a year and a half after the District re-reviewed and granted Plaintiff's religious exemptions. *See Groff v. Dejoy*, 600 U.S. 447, 468 (2023) (abrogating case law based on *Hardison* to hold that an employer must instead show granting the accommodation would result in "substantial increased costs in relation to the conduct of its particular business.")

its decision, the Supreme Court would abrogate settled case law about the definition of undue hardship. Under these circumstances, the Court should not permit the punishment of the District. Because Plaintiffs have failed to produce sufficient evidence that the District acted with evil motive or reckless indifference to their rights, the District is entitled to judgment notwithstanding the verdict on the issue of punitive damages.

**B.     Alternatively, the award of punitive damages is "grossly excessive" and should be remitted.**

In the alternative, the punitive damages award is grossly excessive in light of the overwhelming evidence of the District's good faith navigation of a public health crisis while abiding by the law in effect at the time, and the dearth of evidence of any malice, and requires remittitur by trial court.

The 14th Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution prevent the deprivation of its life, liberty, or property, without due process of law. *Wilkins v. Board of Regents of Harris-Stowe State University*, 519 S.W.3d 526, 546 (Mo. App. E.D. 2017), *citing Estate of Overbey v. Chad Franklin Nat'l Auto Sales North, LLC,* 361 S.W.3d 364, 372 (Mo. banc 2012)*; Fleshner v. Pepose Vision Inst., P.C.,* 304 S.W.3d 81, 87 (Mo. banc 2010)*.* Punitive damage awards must meet the requirements of due process and comply with a state's legitimate interest in punishing unlawful conduct and deterring repetition of harmful conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). Due process prohibits "the imposition of grossly excessive or arbitrary punishments on a tortfeasor" because to "the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Id*. at 416-17. The following factors are considered when determining whether an award of punitive damages is "grossly excessive or arbitrary": "(1) the degree of reprehensibility of the conduct at issue; (2) the ratio of actual harm to punitive

6

damages; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in comparable cases." *Wilkins*, 519 S.W.3d 526, 546 (*quoting BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). Some wrongs are more blameworthy than others. *BMW of N. Am., Inc.*, 517 U.S. at 575. For instance, "trickery and deceit" are more reprehensible than negligence. *Id.* at 576 (citing *TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443 (1993)).

Evidence at trial indicates that the harm was economic, with Plaintiff's alleging lost wages and other pecuniary losses for a brief period of time.[3] Far from evincing a disregard for the health and safety of others, the overwhelming weight of the evidence is that the District was deeply concerned with the health and safety of its students, parents, and staff. The denials of the religious exemptions were isolated to a very specific point in time, and the District began granting religious exemptions to the vaccination requirement as soon as circumstances changed. The Plaintiffs utterly failed to produce legally sufficient evidence that the harm was the result of reckless disregard, much less intentional malice or trickery or deceit. Furthermore, as discussed above, the District's decision to rely on the controlling precedent as it existed at the time was reasonable, not punishable. *See, e.g., BMW,* 517 U.S. 559, 578 (In the absence of a determination to the contrary, a corporation was reasonable in its interpretation of the law). The District's behavior evidences none of the circumstances usually associated with egregiously improper conduct and was not sufficiently reprehensible to warrant the imposition of the punitive damage award. The award transcends the constitutional limit and should be remitted, or in the alternative a new trial awarded.

## II. THE GIVEN JURY INSTRUCTIONS CONTAIN SUBSTANTIAL ERRORS.

The Court's given jury instructions are filed as Doc. 340. The District incorporates its objections to these instructions in Documents 150, 204, and 254 by reference as if fully stated here.

---

[3] The jury awarded less than $100,000 for each Plaintiff in actual damages, which included damages for emotional distress. (Doc. 348)

Specifically, the following errors in the jury instructions warranted a new trial or judgment as a matter of law:

### A.     Instruction No. 8 (Doc. 340 at 24)

This instruction defines "sincerely held religious belief." The instruction should have included the three factors to determine whether a belief is religious examined by the Eighth Circuit in *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000) and developed by the Third Circuit in *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025 (3rd Cir. 1981). (Doc. 254 at 2-3). The instruction also should have provided factors that allowed the jury to assess the credibility of the Plaintiffs stated religious beliefs. (Doc. 254 at 4; Doc. 204 at 4). For example, Plaintiff Marc Ingram admitted that he lied about his religious activities when he submitted his religious exemption and Plaintiff Anthony Comparato admitted that he submitted a document that purported to be from his pastor, but was manipulated by him.

### B.     Instruction No. 9 (Doc. 340 at 25)

This instruction defines the Free Exercise of Religious claim. The instruction requires the jury to find for a Plaintiff if the Plaintiff's conduct was merely "motivated" by sincerely held religious beliefs, which is not the proper standard. The jury should have been instructed on the "substantial burden" standard for free exercise. (Doc. 254 at 6).

### C.     Instruction No. 10 (Doc. 340 at 26)

This instruction ostensibly instructs the jury on the Equal Protection Claim but improperly instructs the jury that they must find for a Plaintiff on the Equal Protection Claim if they find for that Plaintiff on the Free Exercise claim when they are wholly separate claims with different elements and requirements. (Doc. 229 at 37). This instruction should not have blended these two claims.

### D. Instruction No. 11 (Doc. 340 at 27)

This instruction requires the jury to apply strict scrutiny to the constitutional claims when the jury should have been instructed on the rational basis test for the constitutional claims. (Doc. 254 at 7; Doc. 204 at 7-8; Doc. 130 at 24-30). Multiple federal circuit courts have applied the rational basis test to COVID-19 vaccination. (Doc. 204 at 7-8). Further, the Court should have included a third compelling interest – protecting the health, safety, and welfare of the students (Doc. 254 at 7; Doc. 229 at 49).

### E. Instruction No. 12 (Doc. 340 at 28)

This instruction improperly combines the MHRA and Title VII claims, using the "failure to accommodate" theory of liability for both claims. (Doc. 254 at 9, 11). Plaintiffs pleaded religious discrimination claims under the MHRA and Title VII, and never even mentioned accommodations in those counts. (First Amended Complaint, Doc. 24 at 35-38). The MHRA and Title VII religious discrimination claims have different elements and damages; accordingly, the Court should have instructed the jury based on the Missouri Approved Instructions and 8th Circuit Model Jury Instructions for those claims as it proposed earlier in the litigation. (Earlier version of Court-drafted jury instructions, Doc. 204-1 at 6-7).

### F. Instruction No. 13 (Doc. 340 at 29)

This instruction defines the undue hardship defense for the MHRA and Title VII claims. The instruction should have specified that the jury could find an undue hardship based on intangible risks, such as the health and safety risk imposed by unvaccinated individuals during the relevant timeframe. (Doc. 254 at 10).

### G. Instruction Nos. 15-16 (Doc. 340 at 32-33)

This instruction concerns punitive damages. For the reasons stated above regarding punitive damages, the Court should not have instructed the jury on punitive damages at all.

9

## III. THE DISTRICT SHOULD HAVE A NEW TRIAL BECAUSE IT WAS PROHIBITED FROM DISCOVERING PLAINTIFFS' MEDICAL RECORDS.

During the course of this case, the District sought discovery concerning Plaintiffs' healthcare activities. When Plaintiffs objected to those discovery requests, the District filed a Motion to Compel ("Motion"). *See* (Doc. 60)[4]. The discovery requests at issue were as follows:

- An Interrogatory asking each Plaintiff to identify and list all vaccinations, pharmaceutical products, medications, medicines, remedies, pills, cures, drugs, vitamins, medical treatments, antidotes, or supplements that they have taken, used, ingested, or received since December 1, 2015, regardless of whether they were prescribed, purchased over-the-counter, obtained at a dispensary, or obtained in violation of any federal, state, or local laws, and a Request for Production asking for any documents or correspondence relating to those categories from August 1, 2015 to the present;

- A Request for Production seeking any communications between Plaintiffs and any other person regarding his or her medical conditions or injuries, pharmaceutical products, medications, medicines, remedies, pills, cures, drugs, vitamins, medical treatments, antidotes, or supplements from December 1, 2019 to the present; and

- A Request for Production seeking each Plaintiff's healthcare records from January 1, 2021 to present, and it was requested that Plaintiffs execute a healthcare record release for each physician.

The Court granted the District's Motion to Compel the interrogatory only with respect to information concerning vaccinations Plaintiffs had taken, and it denied the District's requests for healthcare records. *See* (*Status Hearing Tr. – 2/27/24*, p. 34). The Court relied on FRCP 26(b)(1), saying in part that the Court needed "to balance the intrusiveness of the requests to the likelihood of discovery of relevant information." *See (Status Hearing Tr. – 2/27/24*, p. 34).

The Plaintiffs' medical records were directly relevant to their claims. Here, *all* the Plaintiffs claim that they are unvaccinated because their religious beliefs prohibit COVID-19 vaccination. Whether any of the Plaintiffs received any COVID-19 vaccinations is directly relevant to all of

---

[4] The District incorporates the Motion to Compel by reference as if fully stated here.

their claims, but the District had no ability to test the veracity of their unvaccinated status by reviewing relevant medical records. If any of the Plaintiffs had been partially or fully vaccinated against COVID-19 before the trial, the jury may have found against them on all of the claims. Further, some of the Plaintiffs stated in their religious exemption paperwork that ***they do not take any medications***, or avoid medications developed using fetal stem cells because of their religious beliefs. The District was not allowed to test the veracity of these statements through discovery; instead the Court allowed the Plaintiffs to self-report their medical activities in interrogatory answers or depositions, without any nonparty medical records to test their statements.

The District was entitled to engage in discovery regarding how Plaintiffs' religious beliefs and practices influenced their healthcare activities, whether Plaintiffs' medical history showed that they engaged with medical treatment in contradiction to their stated beliefs in their requests for religious exemption, and whether they actually had sincerely held religious beliefs when considering certain medications and/or vaccinations. As a result, the Court erred when determining that obtaining this information was overly broad, not narrowly tailored, and not proportional to the needs of the case, especially when considering that to establish *any* of their claims, Plaintiffs first needed to show they had a sincerely held religious belief.

### IV. THE DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE.

#### A. Plaintiffs failed to present sufficient evidence that their sincerely held religious beliefs prohibited and conflicted with vaccination.

Each Plaintiff was required to establish a sincerely held religious belief that actually conflicted with the District's requirement to obtain COVID-19 vaccination. *Kale v. Aero Simulation, Inc.,* 139 F.4th 684, 688 (8th Cir. 2025). Several Plaintiffs' testimony in this case suggest that: their beliefs were not religious; their religious beliefs were not sincerely held; or that

with respect to those with sincerely held religious beliefs, those beliefs did not conflict with the District's policy. (Doc. 339 at 6-9; Doc. 328). As a result, the District is entitled to judgment as a matter of law on Plaintiffs' claims.

**B.  The clear weight of the evidence establishes that the District's implementation of Policy 4624 was rationally related to its compelling interests and narrowly tailored to the same.**

The evidence at trial clearly established, by the greater weight of the evidence, that the District could not have accomplished its compelling interests with respect to adequately educating all students and/or stemming the spread of COVID-19 through means less restrictive of Plaintiffs' religious beliefs. *See* (Doc. 339 at 4-6). The evidence at trial established that despite the District's attempt at numerous, less restrictive means during the course of the pandemic, the District's students' educational progress and mental health suffered. Further, the District was overwhelmed with the difficulties of complying with the City of St. Louis Department of Health's quarantine, social distancing, and contact tracing requirements, and the Department of Health denied the District's request for a modification of the quarantine requirements. As the District's quarantine problem was not abated by other efforts (which included masking, temperature screening, social distancing, extensive cleaning, and on-site COVID-19 testing), removing unvaccinated adults from the building was the least restrictive means to stabilize the District's workforce and keep students in class. Under such circumstances, the District did not violate the Free Exercise Clause or the Equal Protection Clause.

**C.  Plaintiffs failed to present evidence that they were treated differently than similarly situated employees.**

As an initial matter, there was no evidence that any of the individuals who were given medical/disability exemptions were in fact medically able to be vaccinated. Likewise, none of the Plaintiffs produced any evidence that they were medically unable to be vaccinated. Accordingly,

all of the Plaintiffs failed to present legally sufficient evidence that the District treated them differently than the District treated all employees who were medically capable of being vaccinated. (*See* Doc. 339 at 10-11). In particular, Plaintiffs produced insufficient evidence to establish their Equal Protection claim, because they failed to produce evidence establishing that they were similarly situated to the District's employees who received a medical exemption from the COVID-19 vaccination. For example, the Plaintiff at trial were all teachers who provided in-person instruction to the students during the relevant timeframe. The Plaintiffs made no effort to compare their job duties and roles to employees who were granted medical exemptions.

In addition, none of the Plaintiffs identified other employees at the District (other than those receiving medical exemptions) they believed were similarly situated to themselves in all relevant respects who were treated more favorably than they were, nor did Plaintiffs produce evidence establishing that the District treated them differently for an improper purpose, such as religious discrimination. The undisputed testimony at trial was that the District suspended or terminated *all* unvaccinated employees who were medically capable to receive a vaccination, regardless of whether they requested a religious exemption from the vaccination requirement.

**D.     The District's evidence established that employing the Plaintiffs from October 2021 to January 2022 while they were unvaccinated was an undue hardship for the MHRA and Title VII claims.**

The District presented evidence that clearly establishes, by the greater weight of the evidence, that the District lawfully denied the requests for religious exemption from the vaccination policy because granting the requested religious exemptions would have resulted in an undue hardship on the District. *See* (Doc. 339 at 2-4). Testimony was elicited that the District did not have the testing resources or the human resources to manage the logistics of twice-weekly COVID testing and reporting for nearly 200 unvaccinated employees who initially requested a religious exemption, and that the District could not manage the unpredictability of so many

13

unvaccinated employees at risk of being quarantined for 14-24 days for simply being in close contact with someone who had COVID. Further, there was testimony establishing that during the relevant time period, the City of St. Louis Department of Health required any unvaccinated individual who was in close contact with an infected person to quarantine from the District's buildings for two weeks, regardless of whether the unvaccinated individual ever developed symptoms of COVID-19. On this record, the District established as a matter of law that it would have suffered an undue hardship were it required to grant the Plaintiffs' requests for religious exemption and permit them to work while unvaccinated, and the District is entitled to judgment as a matter of law in its favor on Plaintiffs' Free Exercise and Equal Protection claims.

Respectfully submitted,

**MICKES O'TOOLE, LLC**

By: */s/ Vincent D. Reese*
Vincent D. Reese, # 49576
vreese@mickesotoole.com
Serena Wilson-Griffin, #58677
Swilson-griffin@mickesotoole.com
Jasmine Y. McCormick, #66386
jmccormick@mickesotoole.com
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131
Telephone: (314) 878-5600
Facsimile: (314) 878-5607

*Attorneys for Defendant Board of Education of the City of St. Louis*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July, 2025, a true and correct copy of the foregoing was filed with the Court's electronic filing system and thereby served via electronic mail to all counsel of record:

KASPER LAW FIRM, LLC
Kevin J. Kasper
Ryan P. Schellert
3930 Old Hwy 94 South - Suite 108
St. Charles, MO 63304
KevinKasper@KasperLawFirm.net
RyanSchellert@KasperLawFirm.net

*Attorneys for Plaintiff*

*/s/ Vincent D. Reese*